IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

OLGA TORRES and PEDRO BONILLA,

Plaintiffs,

v.

BELLA VISTA HOSPITAL, INC., et al.,

Defendants.

**CIVIL NO. 06-2158 (JAG/BJM)**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### PROCEDURAL BACKGROUND

Plaintiffs Olga Torres and Pedro Bonilla ("plaintiffs") filed a complaint against several co-defendants for declaratory relief; violations of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 et seq. ("ERISA"); and Puerto Rico law claims for professional malpractice, misrepresentation, breach of contract, and tort. (Docket No. 1). Plaintiffs seek a declaration of ERISA coverage, a computation of the benefits due them, restitution, back pay, punitive damages, and other equitable relief as a result of the alleged wrongful conduct. (Docket No. 1, p. 22-24). Before this court are the following motions: Banco Popular de Puerto Rico's ("BPPR") Motion to Dismiss under Fed.R.Civ.P. 12(b)(1) ("Rule 12(b)(1)"), alleging that this court does not have subject matter jurisdiction over this matter and, alternatively, that the court should not exercise its discretion to entertain the action for declaratory relief (Docket No. 34), plaintiffs' opposition (Docket No. 59), and BPPR's reply (Docket No. 67); Watson Wyatt & Company's ("Watson Wyatt") Motion to Dismiss for lack of subject matter jurisdiction and for failure to state a claim (Docket No. 38), plaintiffs' opposition (Docket No. 64), and Watson Wyatt's reply (Docket No. 72); Panel, Kerr & Foster's ("PKF") Motion to Dismiss (Docket No. 39), plaintiffs' opposition (Docket No. 60), and PKF's reply (Docket No. 69); Bella Vista Hospital, Inc.'s and Ruben Pérez's ("co-defendants") Motion to Dismiss for lack of subject matter jurisdiction (Docket No. 45), and plaintiffs' opposition (Docket No. 64); and Ruben Pérez's unopposed Motion for Partial Summary

Torres v. Bella Vista Hosp., Inc.                                                                **Page 2**
Civil No. 06-2158 (JAG/BJM)
Report and Recommendation

Judgment (Docket No. 31).

The case was assigned to me for a report and recommendation on the motions listed above pursuant to 28 U.S.C. § 636(b)(1). (Docket No. 56). For the reasons that follow, I recommend that said motions be **granted in part** and **denied in part** as articulated below.

## FACTUAL BACKGROUND

The following facts were taken from the complaint, the parties' moving papers, and the exhibits attached thereto.

Bella Vista Hospital, Inc. ("Hospital") is a non-profit corporation organized under the laws of Puerto Rico. (Docket No. 34, Exh. A, p. 1). Ruben Pérez serves as vice president of the Hospital. (Docket No. 1, ¶ 14; Docket No. 31, ¶ 5). The by-laws of the Hospital require that more than half of its Board of Trustees be active members of the Seventh Day Adventist Church. (Docket No. 34, Exh. BB). The Hospital reports to the Antillian Union Conference of Seventh Day Adventists,[1] which reports to the Interamerican Division of the Church. (Docket No. 34, p. 17).

The Hospital created the Bella Vista Hospital, Inc. Pension Plan ("Plan") on January 1, 1982. (Docket No 59, Exh. 1). The Plan has been subject to three different sets of rules: one dated January 1, 1982; another dated January 1, 1985; and one established as the Adventist Plan rules. (Docket No. 1, ¶ 34). But only the 1982 rules are on record before the court. (See Docket No. 59, Exh. 2). Those rules established that at the time of the Plan's creation it was subject to ERISA. (Docket No. 59, Exh. 2, p. 1, 6, 8). They further establish that the Hospital, acting through its Board of Trustees, is empowered to delegate the administration of the Plan to whom it chooses. (Docket No. 59, Exh. 2, p. 6). On January 24, 1996, the Internal Revenue Service ("IRS") issued a determination letter stating that the Hospital was "exempt from Federal income tax under section 501(a) of the Internal Revenue Code as an organization described in section 501(c)(3)." (Docket No. 34, Exh. C). In

---

[1]This is an unsupported assertion made in BPPR's motion to dismiss. However, co-defendant Ruben Pérez, in a sworn statement, stated that, to his knowledge, no organization exists by the name of Antillian Union Conference of the Seventh Day Adventist. (Docket No. 30, ¶ 5).

1997, the Hospital filed a Form 5500 along with its federal income tax return (Docket No. 40, Exh. V), and attached a notation to it entitled "Pension plan," which stated: "The plan is subject to the provisions of the Employee Retirement Income Security Act of 1974 (ERISA)." Id. at Exh. VI.

A deed of trust was executed on July 29, 1983, establishing the Bella Vista Hospital Pension Trust. (Docket No. 34, Exh. B). It named Banco de Ponce as trustee, id. at p. 2, but BPPR has become the successor in interest as trustee (Docket No. 34, p. 3).

Plaintiffs Olga Torres and Pedro Bonilla were both employed by the Hospital and participated in the Plan. (Docket No. 1, ¶ 15). Plaintiff Bonilla became disabled in 1998 and plaintiff Torres became disabled in 1999. (Docket No. 59, p. 2).

In 2000, the IRS issued a ruling—which had been requested by the Hospital—that found the Plan to be "a Church Plan within the meaning of section 414(e) of the Code." (Docket No. 34, Exh. A). The ruling went on to state that it "is directed only to the taxpayer who requested it. Section 6110(k)(3) of the Code provides that it may not be used or cited by others as precedent." Id. The Plan was terminated and liquidated by corporate resolution dated August 14, 2003.[2] (Docket No. 34, Exh. D). As a result of this termination and liquidation, neither plaintiff received the benefits they would have received under the Plan had it remained covered by ERISA. (Docket No. 59, p. 3).

Watson Wyatt was a corporate service provider to the Plan. (Docket No. 38, p. 6; Docket No. 1, ¶ 11). Its duties included providing actuarial and consulting services regarding the establishment, administration, termination and liquidation of Plan benefits, the valuation of plan assets, and providing certain Plan documents and rules for the Plan. (Docket No. 38, p. 6; Docket No. 1, ¶ 11, 25, 27-28, 32-33). PKF is a certified accounting firm that acted as a service provider to the Plan, as well as to the Hospital. (Docket No. 1, ¶ 12). These services included accounting and financial consulting regarding the administration, operation and termination of the Plan. Id.

Plaintiffs filed a lawsuit in state court in 2004 against, *inter alia*, the Hospital, BPPR, the

---

[2] BPPR avers that the Plan was terminated and liquidated on December 31, 1998, but cites to a corporate resolution dated August 14, 2003. (Docket No. 34, p. 8; Exh. D).

Antillian Union Conference of the Seventh Day Adventist, the Retirement Committee of the General Conference, the General Conference of Seventh Day Adventist, and the Plan, to recover the lost benefits (Docket No. 34, Exh. H), and filed this lawsuit in 2006 to recover ERISA disability benefits. (Docket No. 1). The state court lawsuit was stayed pending resolution of this action. (See Docket No. 59, p. 1; Docket No. 34, Exh. CC).

## STANDARD OF REVIEW

The co-defendants addressed in this report and recommendation submitted motions to dismiss under two different standards; Rule 12(b)(1) and Rule 12(b)(6). Each will be discussed in turn.

### I.    Rule 12(b)(1) and Summary Judgment

Ordinarily, a motion challenging subject matter jurisdiction is analyzed as a motion under Rule 12(b)(1). However, "if jurisdictional issues cannot be separated from the merits of the case, then consideration of matters outside the pleadings transforms the motion into one for summary judgment." Jones-Booker v. United States, 16 F.Supp.2d 52, 58 n.9 (D.Mass. 1998); see also Gonzalez v. United States, 284 F.3d 281, 287 (1st Cir. 2002) ("A Rule 12(b)(1) motion is sometimes transformed into a Rule 56 motion where jurisdictional issues cannot be separated from the merits of the case."); Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995) ("where resolution of the jurisdictional question is intertwined with the merits of the action, a court is required to treat the motion as one for dismissal pursuant to Fed.R.Civ.P. 12(b)(6), or as one for summary judgment pursuant to Fed.R.Civ.P. 56"); Trentacosta v. Frontier Pac. Aircraft Indus., Inc., 813 F.2d 1553, 1558 (9th Cir. 1987) (when facts relevant to the determination of subject matter jurisdiction go directly to the merits of plaintiff's claim, the district court should apply summary judgment standards to the motion to dismiss for lack of subject matter jurisdiction).

The jurisdictional issue is usually "intertwined with the merits of the action where the court's subject matter jurisdiction depends upon the same statute which governs the substantive claims in the case." McLellan Hwy. Corp. v. United States, 95 F.Supp.2d 1, 6 (D.Mass. 2000), *citing* Holt,

46 F.3d at 1003. However, the two issues are not intertwined, despite sharing a common statutory source, where "the facts relevant to the determination of subject matter jurisdiction do not go directly to the merits of the plaintiff's claim," such as when the jurisdictional issue is whether the claim is time-barred. Gonzalez, 284 F.3d at 287. Here, ERISA provides the basis for both subject matter jurisdiction and the causes of action. Furthermore, the facts relevant to the determination of subject matter jurisdiction are the very same facts relevant to the merits of plaintiffs' claims—i.e., the facts relevant to whether the Plan is a "church plan." Accordingly, BPPR's motion to dismiss under Rule 12(b)(1) will be converted to a motion for summary judgment.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material only if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining if a material fact is "genuine," the court does not weigh the facts but, instead, ascertains whether the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.; Leary v. Dalton, 58 F.3d 748, 751 (1st Cir. 1995).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [evidence] ... which it believes demonstrate the absence of a genuine issue of material fact." Crawford-El v. Britton, 523 U.S. 574, 600 n.22 (1998), *quoting* Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once this threshold is met, the burden shifts to the nonmoving party. The nonmovant may not rest on mere conclusory allegations or wholesale denials. Fed.R.Civ.P. 56(e); Libertad v. Welch, 53 F.3d 428, 435 (1st Cir. 1995). Instead, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Further, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsuchita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Of course, the court draws inferences and

evaluates facts "in the light most favorable to the nonmoving party." Leary, 58 F.3d at 751. Still, summary judgment is appropriate where the nonmoving party rests entirely upon "conclusory allegations, improbable inferences, and unsupported speculation" on any essential element of the discrimination claim. Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

## II.     Rule 12(b)(6)

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), the court must accept as true all well-pleaded factual claims, and indulge all reasonable inferences in the non-movant's favor. Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 5 (1st Cir. 2005). Dismissal under Rule 12(b)(6) is appropriate if the facts alleged, taken as true, do not justify recovery. Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996). In order to survive a motion to dismiss, the plaintiff must set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988). Although all inferences must be made in the non-movant's favor, the court need not accept "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." Aulson, 83 F.3d at 3.

Moreover, when considering a motion to dismiss under Rule 12(b)(6), the court must limit its focus to the allegations of the complaint. Litton Indus., Inc. v. Colon, 587 F.2d 70, 74 (1st Cir. 1978); Doyle v. Hasbro, Inc., 103 F.3d 186, 190 (1st Cir. 1996). Specifically, the inquiry should be "whether a liberal reading of [the complaint] can reasonably admit of a claim." Litton Indus., 587 F.2d at 74.; see also Doyle, 103 F.3d at 190.

## DISCUSSION

## I.     Whether the Plan is a "Church Plan"

BPPR, Watson Wyatt, PKF, the Hospital, and Ruben Pérez aver that the Plan is not subject to ERISA because it is a church plan within the meaning of § 414(e) of the Internal Revenue Code, 26 U.S.C. § 414(e), and that the court therefore lacks subject matter jurisdiction over this case. (Docket No. 34, p. 18 (BPPR); Docket No. 38, p. 8(Watson Wyatt); Docket No. 39, p. 11 (PKF);

Docket No. 45, p. 2, 7-8 (the Hospital and Ruben Pérez)).  Plaintiffs argue that the Plan is covered by ERISA, and that the defendants deprived plaintiffs of their due benefits under the federal statute by improperly terminating the pension program.  (See, e.g., Docket No. 59, p. 14).

The provisions of ERISA do not apply to a church plan "with respect to which no election has been made under section 410(d) of Title 26."  29 U.S.C. § 1003(b)(2).  Plaintiffs argue that the Hospital chose to establish an ERISA-covered pension and welfare benefits plan, and that it cannot now renege on its promise to provide such benefits to its employees.  (Docket No. 59, p. 8-9).  If the Hospital did make an election under § 410(d), then even if the Plan qualifies as a church plan, it would still be covered by ERISA.

Under 26 C.F.R. § 1.410(d)-1(c)(5), an election under § 410(d) must contain a statement indicating: "(i) that the election is made under section 410(d) of the Code and (ii) the first plan year for which it is effective."  Here, the rules applicable to the Plan established in 1982 contain several statements declaring that the Plan is subject to ERISA, but make no mention of § 410(d).  (Docket No. 59, Exh. 2, p. 1, 6, 8).  Likewise, the Hospital attached to its 1997 Form 5500 a notation entitled "Pension plan," which stated: "The plan is subject to the provisions of the Employee Retirement Income Security Act of 1974 (ERISA)."  (Docket No. 40, Exh. VI).  Neither of these actions by the Hospital amounts to a § 410(d) election because the Hospital never explicitly states that it is making the election under that specific section, as required by the regulations.[3]  Because no § 410(d) election was made, ERISA will not apply if the plan is in fact a "church plan."

Section 1002 of Title 29 defines church plan as "a plan established and maintained ... for its employees ... by a church or by a convention or association of churches which is exempt from tax

---

[3]There is very little case law on what actions must be taken in order to effect a § 410(d) election.  The only case listed in either statute's – 26 U.S.C. § 410 and 29 U.S.C. § 1003 – annotations which addresses this issue is Catholic Charities of Maine, Inc. v. City of Portland, 304 F.Supp.2d 77 (D.Me. 2004).  There, the court stated that "Catholic Charities filed an election under the Internal Revenue Code Section 410(d), 26 U.S.C. § 410(d), for all of its plans, welfare and pension, stating its intent to be bound by federal law."  Id. at 84.  That case provides very little guidance on what actions are necessary for a § 410(d) election.  As a result, I defer to the Code of Federal Regulations, which imposes a strict requirement that the electing party state explicitly that it is making its election under § 410(d).  26 C.F.R. § 1.410(d)-1(c)(5).

under section 501 of Title 26." 29 U.S.C. § 1002(33)(A). Such a plan "includes a plan maintained by an organization ... the principal purpose or function of which is the administration or funding of a plan or program for the provision of retirement benefits or welfare benefits, or both, for the employees of a church or a convention or association of churches, if such organization is controlled by or associated with a church or a convention or association of churches." 29 U.S.C. § 1002(33)(C)(i). However, courts have overwhelmingly interpreted § 1002(33)(C)(i) as *not* limiting the non-church organizations which can establish church plans to those whose "principal purpose or function" is the administration or funding of a retirement or welfare benefits plan or program. See Chronister v. Baptist Health, 442 F.3d 648, 652-53 (8th Cir. 2006) (treating a healthcare organization as encompassed within the church plan exception if it is controlled by or associated with a church, regardless of what its principal purpose or function is); Lown v. Continental Casualty Co., 238 F.3d 543, 547-48 (4th Cir. 2001) (same); Catholic Charities of Me., Inc. v. City of Portland, 304 F.Supp.2d 77, 86 n.4 (D.Me. 2004) (finding that § 1002(33)(C)(i) provides "an alternative means of satisfying the 'church plan' definition" rather than limiting the definition of church plan); Friend v. Ancillia Systems Inc., 68 F.Supp.2d 969, 973 (N.D.Ill. 1999) ("section 1002(33)(C)(i) does not 'require' that the plan be maintained by an organization the principle purpose of which is administering or funding the plan. The statute merely 'includes' such plans in the definition of church plan... [The intent of (C)(i)] is to require that if an organization controlled by or associated with a church wants to hire an administrator for its plan, the administrator must also be controlled by or associated with the church."); see also Peter J. Wiedenbeck, *ERISA's Curious Coverage*, Wash. Univ. L.Q. 311, n.178 (1998) ("Where the plan is set up by the church-related charity for its employees, the expansive definitions of 'church' and 'church employee' seem to assure that the plan is 'established and maintained' by a (deemed) church for its employees. But church control or influence (direct or indirect) over the board or committee that administers the plan also satisfies the definition. Some rulings explicitly treat the latter requirement as an alternative means of satisfying the church plan definition."); Dept. of Labor Opinions, 94-11A; 95-10A; 90-12A (all treating §

1002(33)(C)(i) as an alternative means of meeting the definition).

Courts have focused on other ERISA provisions and regulations which "bring[] a plan established or maintained by a non-church organization within the general definition of 'church plan' if that organization is 'controlled by' or 'associated with' a church." Catholic Charities, 304 F.Supp.2d at 85; see also Chronister, 442 F.3d at 652 (enunciating the same legal conclusion as Catholic Charities); Lown, 238 F.3d at 547 (same). One such provision is § 1002(C)(iv), which states that "[a]n organization, whether a civil law corporation or otherwise, is associated with a church or a convention or association of churches if it shares common religious bonds and convictions with that church or convention or association of churches." 29 U.S.C. § 1002(C)(iv); see also 26 C.F.R. § 1.414(e)-1(d)(2) ("An organization is associated with a church if it shares common religious bonds and convictions with that church."). In addition, 26 C.F.R. § 1.414(e)-1(d)(2) states that an organization is controlled by a church when, for example, a religious institution appoints a majority of the organization's officers or directors.

Two courts have addressed whether employee disability plans created by non-profit hospital corporations qualify as "church plans" under ERISA. In Lown, the plaintiff claimed that the federal court lacked subject matter jurisdiction over her case because her long-term disability plan was a church plan not governed by ERISA. Lown, 238 F.3d at 545. There, Lown worked for Baptist Healthcare System of South Carolina, Inc., which until 1993 had been affiliated with the South Carolina Baptist Convention, a group of state Baptist churches. After 1993, Baptist Healthcare did not receive any funding from either the Southern Baptist Convention or the South Carolina Baptist Convention. Moreover, Baptist Healthcare served individuals of all faiths and creeds. The court held that Baptist Healthcare's long-term disability benefits plan did not qualify as a church plan under ERISA because Baptist Healthcare was not controlled by a church or convention nor were there common religious bonds and convictions between the two entities. Id. at 548. In arriving at its conclusion, the court applied a non-exclusive three-part test to determine whether an organization shares common bonds and convictions with a church: "(1) whether the religious institution plays an

official role in the governance of the organization, (2) whether the organization receives assistance from the religious institution, and (3) whether a denominational requirement exists for any employee or patient/customer of the organization." Id.

In Chronister, the Eighth Circuit adopted the Lown three-part test to determine whether a nonprofit hospital's disability plan fit into the "church plan" exception to ERISA. Chronister, 442 F.3d at 653. There, Chronister worked for Baptist Health, a nonprofit corporation that owns and operates hospitals. Chronister became disabled on account of injuries she suffered in a car accident and filed a claim for long-term disability benefits. After denial by the insurer, Chronister brought suit, which was removed to federal court. The insurer argued that ERISA governed the plan, but Chronister averred that the plan fit within the "church plan" exception. "Specifically, Chronister point[ed] out that Baptist Health requires its CEO, its board of directors, and its chaplains to be members of Baptist churches. Baptist Health's management is instructed to follow religious principles, and under Baptist doctrine ... Moreover, if Baptist principles and secular medicine conflict, Baptist principles control, i.e. in the case of abortion." Id. at 652. In addition, "[t]he CEO refer[ed] to Baptist Health as a Christian organization that operates a healing ministry where all management employees are expected to be spiritual leaders as determined by Christian principles," and "all management employees [must] attend a seminar entitled 'Spiritual Dimensions of Leadership.'" Id. at 653. Despite these numerous ties to the Baptist church, the court, applying the Lown factors, found that Baptist Health's long-term disability benefits plan to not be a "church plan," and was therefore governed by ERISA. Id.

Here, defendants' claim that the Hospital is controlled by or associated with the Seventh Day Adventist Church rests primarily upon three grounds articulated by BPPR, none of which establishes such a connection between the Hospital and the Church. First, BPPR points out that the Hospital's by-laws require that more than half of the members of the Board of Trustees be active members of the Church. (Docket No. 34, p. 17). This requirement falls short of the one present in Chronister, which was found to be insufficient to establish control by or an association with the Baptist church.

There, the organization's CEO and board of directors were *all* required to be members of the Baptist church, and all managers were required to be "spiritual leaders as determined by Christian principles" and to attend a seminar entitled "Spiritual Dimensions of Leadership." Chronister, 442 F.3d at 653. Those requirements were deemed insufficient to establish control by or association with the Baptist church because, inter alia, the local Baptist church did not *appoint* any board members. Id. In this case, *none* of the members of the Hospital's Board of Trustees is appointed by the Church.

Second, BPPR avers in its motion that "the Hospital (through its Board of Trustees) reports directly to the Antillian Union, which in turn reports to the Interamerican Division of the Church." (Docket No. 34, p. 17). However, the Hospital's bylaws provide that only four of 22 members of the Board of Trustees must be officers of the Antillian Union. (Docket No. 34, Exh. BB). BPPR fails to explain how this small number of Antillian Union-affiliated board members equates to the Hospital "report[ing] directly to the Antillian Union," and there is insufficient evidence before the court to make such a finding.[4]

Finally, defendants argue that the administration of the Plan is delegated to the Retirement Committee, the members of which are appointed, and may be removed or changed at any time, by the Hospital's Board of Trustees. (Docket No. 34, p. 17; Exh. A, p. 2). However, since the composition of the Board of Trustees does not denote control by or association with the Church, the fact that the Board of Trustees appoints and removes members of the Retirement Committee likewise falls short of establishing such control. The other defendants articulate essentially the same arguments as BPPR based on the same facts. (*Compare* Docket No. 34, p. 13-18, *with* Docket No. 38, p. 8-12; Docket No. 39, pp. 11-12; *and* Docket No. 45, p. 2, 7-8).

Defendants try to distinguish Lown and Chronister from the present case by noting that neither of those cases involved a prior IRS letter ruling finding the existence of a "church plan." (Docket No. 34, p. 16). However, that distinction does not render those cases inapposite. Here, the

---

[4]In a sworn statement, Ruben Pérez stated that, to his knowledge, no organization exists by the name of Antillian Union Conference of the Seventh Day Adventist. (Docket No. 30, ¶ 5).

first IRS letter ruling was apparently ignored by the Hospital, since more than a year after its issuance the Hospital filed a Form 5500, which non-profit organizations must file in order to qualify for ERISA coverage, along with its federal tax returns.  (Docket No. 40, Exh. V); see Stern v. IBM, 326 F.3d 1367, 1373 (11th Cir. 2003) ("IBM asserts that it annually files Form 5500 with the Department of Labor and the IRS identifying the Program as an ERISA plan."); United States v. Coyle, 63 F.3d 1239, 1242 (3d Cir. 1995) ("Under ERISA, the Fund was required to file a federal Form 5500."). In addition, the Hospital attached to its Form 5500 a notation which stated: "The plan is subject to the provisions of the Employee Retirement Income Security Act of 1974 (ERISA)," id. at Exh. VI, leaving no doubt whatsoever that its intention was to keep the Plan under the authority of ERISA, notwithstanding the IRS ruling.

Although the Hospital requested and was granted a second letter ruling in 2000 (Docket No. 34, Exh. A), that ruling does not constitute binding precedent on this court.  26 U.S.C. § 6110(k)(3); see also David R. Webb Co., Inc. v. Commissioner of Internal Revenue, 708 F.2d 1254, 1257 n.1 (7th Cir. 1983) ("[T]axpayer also cites several private [IRS] letter rulings. These rulings, however, may not be used or cited as precedent."), *citing* 26 U.S.C. § 6110(j)(3) (now (k)(3)).  Rather, such rulings are accorded "some deference," depending on the thoroughness evident in its consideration, validity of its reasoning, and all other factors which give it power to persuade.  Aeroquip-Vickers, Inc. v. C.I.R., 347 F.3d 173, 181 (6th Cir. 2003); see also Tupper v. United States, 134 F.3d 444, 447 (1st Cir. 1998) (holding that IRS rulings are given "due deference," as long as they are reasonable); In re Flindall, 105 B.R. 32, 41 (Bankr. D.Ariz. 1989) ("This court is not bound by a Letter Ruling of the I.R.S. and declines to follow it."), *overruled on other grounds*, 107 B.R. 378 (Bankr. S.D.Fla. 1989); 117 B.R. 812 (Bankr. N.D. Fla. 1990).  The 2000 IRS letter ruling was based entirely upon "statements and information" conveyed by the Hospital to the IRS in 1999 and 2000.  (Docket No. 34, Exh. A, p. 1).  In this case, such a ruling – which is based entirely upon the Hospital's representations, and where the plaintiffs have not been given the opportunity to advocate their position – holds little precedential or persuasive value.

In sum, defendants have failed to prove that the Plan is a church plan as a matter of law. See Catholic Charities, 304 F.Supp.2d at 85. I therefore recommend that all defendants' motions to dismiss (converted to motions for summary judgment) on the ground that the Plan is a church plan be **denied**.

**II.      Whether the Court Will Entertain the Declaratory Judgment Action**

Defendants request in the alternative that the court decline to exercise its discretion to entertain the action for declaratory relief. (Docket No. 34, p. 18). Although it concedes that "the determination of [w]hether to entertain a justiciable declaratory judgment action is a matter committed to the sound discretion of the trial court," (Docket No. 34, p. 19) (see also Horace Mann Ins. Co. v. Johnson By and Through Johnson, 953 F.2d 575, 576 (10th Cir. 1991)), defendants allege that the court should not hear the declaratory judgment action because the plaintiffs filed a prior suit in local court before bringing the federal action.

In Wilton v. Seven Falls Co., 515 U.S. 277 (1995), the Supreme Court noted that "[s]ince its inception, the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." Wilton, 515 U.S. at 286; see also El Dia, Inc. v. Hernandez Colon, 963 F.2d 488, 493 (1st Cir. 1992) ("The Declaratory Judgment Act ... neither imposes an unflagging duty upon the courts to decide declaratory judgment actions nor grants an entitlement to litigants to demand declaratory remedies."). Such discretion endures "even when the suit otherwise satisfies subject matter jurisdictional prerequisites." Wilton, 515 U.S. at 282. The First Circuit has noted that "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." DeNovellis v. Shalala, 124 F.3d 298, 313 (1st Cir. 1997), *quoting* Wilton, 515 U.S. at 288.

The court's discretion, while broad, "is not unfettered." Standard Fire Ins. Co. v. Gordon, 376 F.Supp.2d 218, 224 (D.R.I. 2005), *quoting* Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc.,

996 F.2d 774, 778 (5th Cir. 1993). "The question for a district court presented with a suit under the Declaratory Judgment Act ... is 'whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court.'" Wilton, 515 U.S. at 282, *quoting* Brillhart, 316 U.S. at 495. The Supreme Court has provided the following non-exclusive list of factors governing the proper exercise of discretion: "the scope of the pending state court proceeding, the available state court defenses, and whether the claims of all parties in interest can be settled in the state court proceeding." Gordon, 376 F.Supp.2d at 224, *citing* Wilton, 515 U.S. at 282. Specifically, where "parallel proceedings ... presenting opportunity for ventilation of the same state law issues [are] underway in the state court," these considerations "clearly support[ ]" a district court's decision to stay or dismiss a declaratory judgment action. Wilton, 515 U.S. at 290; see also Brillhart, 316 U.S. at 495 ("Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties.").

While the presence or absence of parallel state proceedings is clearly important, "questions remain about how the term 'parallel' should be construed in the declaratory judgment context." Gordon, 376 F.Supp.2d at 226. "While the First Circuit has not specifically addressed what constitutes a 'parallel proceeding' in the declaratory judgment context post-Wilton, its broad construction of the term outside of the declaratory judgment context supports the view that 'parallel' does not mean 'identical.'" Gordon, 376 F.Supp.2d at 226, *citing* Villa Marina Yacht Sales, Inc. v. Hatteras Yachts, 947 F.2d 529, 533, 536 (1st Cir. 1999) (finding parallel proceedings despite lack of perfect identity of parties and issues); *and* Ambrose v. New England Ass'n of Schs. and Colls., 100 F.Supp.2d 48, 50 (D.Me. 2000) ("[s]uits are parallel if substantially the same parties litigate substantially the same issues in different forums"). "Where the same parties are involved in related federal and state court actions, and where all claims made in the declaratory judgment action in federal court can be adjudicated in state court, a stay or dismissal may be appropriate." Gordon, 376

F.Supp.2d at 226-27, *citing* Wilton, 515 U.S. at 283; *and* Aetna Cas. & Sur. Co. v. Kelly, 889 F.Supp. 535, 540 (D.R.I. 1995).

When applied to the circumstances of this case, this factor weighs in favor of this court's exercise of jurisdiction over plaintiffs' declaratory judgment action. Here, both plaintiffs and BPPR are named parties in the state court litigation. (See Docket No. 34, Exh. H). Importantly, however, as conceded by BPPR, "the local forum does not have subject matter jurisdiction to entertain the ERISA claim against BPPR for alleged violations of its fiduciary duties" (Docket No. 34, p. 26 (emphasis omitted)), which include plaintiffs' second and third causes of action (See Docket No. 1, p. 13-14). Moreover, plaintiffs' prayer for declaratory relief is based on their ERISA claims which were not raised in local court.[5] (Docket No. 1, ¶ 49; Docket No. 34, Exh. H).

Another factor to consider is whether adjudication of the declaratory judgment action requires resolution of factual questions that will be litigated in the underlying state court proceeding. If so, "practicality and wise judicial administration would counsel against proceeding with the declaratory judgment action." Gordon, 376 F.Supp.2d at 227, *citing* Metro. Prop. and Liability Ins. Co. v. Kirkwood, 729 F.2d 61, 62 (1st Cir. 1984). Importantly, the ERISA-related factual questions requiring resolution in the declaratory judgment action, though similar, are still distinct from those in the Puerto Rico lawsuit. The fiduciary issue in the Puerto Rico action turns on whether BPPR (and/or other defendants) acted in a manner amounting to a "willful default" or "manifest negligence," 31 L.P.R.A. § 2569; (see Docket No. 34, Exh. H, ¶ 46), whereas the federal declaratory judgment fiduciary issue turns on whether BPPR (and/or other defendants) acted "with the care, skill,

---

[5]Specifically, plaintiffs pray for the following declaratory relief: "(a) for a determination as to whether the Plan is an ERISA covered plan, (b) to enforce their ERISA rights under the terms of the Plan, (c) to clarify their rights to the monthly disability benefit under the most favorable benefit formula specified in any of the three (3) set [*sic*] of Plan rules documents maintained by the Plan, (d) to clarify the formula and method in determining the lump sum value of Plaintiff Bonilla's benefits as of the date his monthly pension annuity was liquidated by the Plan Administrator, (e) to determine if the Plan was terminated in accordance with the ERISA requirements, (f) to enjoin the liquidation of the Plan, (g) to determine if the plan participants have continue [*sic*] accruing benefits under the plans maintained by the Employer to which Plaintiffs' rights to benefits were transferred[,] (h) to determine whether the Adventist Plan or any other plan maintained by the Employer became an ERISA Plan when Plaintiffs' rights were transferred or merged to such plan, and (i) to determine the effects of the ruling issued by the Internal Revenue Service over the benefits accrued by Plaintiffs under the Plan." (Docket No. 1, ¶ 49).

prudence, and diligence under the circumstances," 29 U.S.C. § 1104.  See Aetna Cas. & Sur. Co. v. Kelly, 889 F.Supp. 535, 542 (D.R.I. 1995) (staying an insurer's request for declaratory relief regarding its duty to indemnify various church officials because church officials' entitlement to indemnification and their liability in tort turned on exactly the same "central" question:  whether the officials were aware of the alleged abuse).  However, even to the extent that the fiduciary liability issue is similar in both the Puerto Rico lawsuit and the federal declaratory judgment action, such similarity is insufficient to compensate for the glaring differences between the two actions.  The central thrust of the declaratory judgment action consists of a request to declare whether the Plan is covered by ERISA, to enforce plaintiffs' ERISA rights, and to specify the calculations of the benefits which are owed to plaintiffs under ERISA.  (Docket No. 1, ¶ 49).  These determinations turn on application of federal law unrelated to the Puerto Rico lawsuit.

The source of law involved in a declaratory judgment action is also relevant to the court's decision of whether to dismiss or stay the action.  See Gordon, 376 F.Supp.2d at 231 (addressing this issue); see also BFI Waste Sys. of N. Am., Inc. v. Travelers Cas. and Sur. Co., 1999 WL 813879, at *6 (D.N.H. Oct. 6, 1999).  While "the absence of any federal law issue weighs in favor of dismissing [the] declaratory judgment action," Gordon, 376 F.Supp.2d at 231, the existence of federal law issues, favors retaining the case.  Here, the declaratory judgment action is based entirely on federal law – i.e., ERISA; a factor weighing heavily against dismissal of the action.

Furthermore,  the principal concern in support of dismissal of declaratory judgments is to avoid "piecemeal litigation, duplication of effort and the possibility of inconsistent results." Gordon, 376 F.Supp.2d at 225 (citations and quotations omitted).  Such worries are less relevant here since the underlying Puerto Rico lawsuit has been stayed pending resolution of the federal action.  (See Docket No. 59, p. 1; Docket No. 34, Exh. CC).  Because the state court already has taken action to prevent duplication of judicial efforts, this factor also weighs against dismissal.

Based upon a balancing of the relevant factors, I recommend that this court find that considerations of practicality and wise judicial administration weigh in favor of adjudication of

plaintiffs' declaratory judgment action.   Thus, I recommend that this court entertain the declaratory judgment action and **deny** BPPR's motion.

## III.   Whether Watson Wyatt is a Plan Fiduciary

Watson Wyatt moves under Rule 12(b)(6) to dismiss the causes of action for breach of fiduciary duties on the ground that it is not a plan fiduciary.  (Docket No. 38, p. 15).  Plaintiffs counter that Watson Wyatt "exercis[ed] discretion in determining and reporting the plan as an ERISA or as a church plan, us[ed] several methods and plan rules to value benefit and plan obligations, [and] recommend[ed] and implement[ed] the termination and liquidation of the plan." (Docket No. 64, ¶ 3).

ERISA imposes liability on "fiduciaries" and "co-fiduciaries" who breach their fiduciary duties, as defined by the statute.  Under the statute, liability extends not only to "named fiduciaries" – defined either as those individuals listed as fiduciaries in the plan documents or those who are otherwise identified as fiduciaries pursuant to a plan-specified procedure – but also to functional fiduciaries.  Beddall v. State Street Bank and Trust Co., 137 F.3d 12, 18 (1st Cir. 1998).  The latter group consists of "persons who act as fiduciaries (though not explicitly denominated as such) by performing at least one of several enumerated functions with respect to the plan." Id.  Specifically, the statute instructs that: "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets ... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A).  "Person," under the statute, includes partnerships, joint ventures, corporations, trusts, estates, associations, and a variety of other types of organizations.  29 U.S.C. § 1002(9).

"The key determinant of whether a person qualifies as a functional fiduciary is whether that person exercises discretionary authority in respect to, or meaningful control over, an ERISA plan, its administration, or its assets." Beddall, 137 F.3d at 18, *citing* O'Toole v. Arlington Trust Co., 681 F.2d 94, 96 (1st Cir. 1982).  The "mere exercise of physical control or the performance of

Torres v. Bella Vista Hosp., Inc.                                                    **Page 18**
Civil No. 06-2158 (JAG/BJM)
Report and Recommendation

---

mechanical administrative tasks generally is insufficient to confer fiduciary status." Beddall, 137 F.3d at 18. In addition, fiduciary status is not an all or nothing proposition; the language of the statute indicates that a person is a plan fiduciary only "to the extent" that he or she possesses or exercises the requisite discretion or control. 29 U.S.C. § 1002(21)(A).

Here, plaintiffs allege that Watson Wyatt "manage[d] the Plan operation since its inception," and "acted as a Plan fiduciary by exerting discretionary authority and control regarding the management and administration of defendant defined benefit Plan." (Docket No. 1, ¶ 11). Plaintiffs also allege that the plan liquidation was implemented using benefits values provided by Watson Wyatt that did not reflect the real value of the benefits, id. at ¶ 28, that Watson Wyatt "exercised discretion in valuating Plan benefits under three (3) sets of plan rules, when the Administrator was directed to apply the ruling retroactively and when the Plan benefits were valuated for purposes of Plan termination," id. at ¶ 32, and that Watson Wyatt "was the entity providing the Employer with the Plan documents and rules for the Plan which did not include all the ERISA required provisions," id. at ¶ 33.

As this is a Rule 12(b)(6) motion, the court must accept as true all well-pleaded factual claims, and indulge all reasonable inferences in the non-movant's favor, Feliciano de Melecio, 406 F.3d at 5, and dismissal is appropriate only if the facts alleged, taken as true, do not justify recovery. Aulson, 83 F.3d at 3. Here, the complaint adequately alleges that Watson Wyatt is a fiduciary under ERISA. Plaintiffs clearly allege that Watson Wyatt exercised discretion in its management and administration of the Plan. I therefore recommend that Watson Wyatt's motion to dismiss the breach of fiduciary claims be **denied**.

**IV.    Whether ERISA Preempts the Puerto Rico Causes of Action**

PKF asserts that plaintiffs' Puerto Rico tort and contract causes of action are preempted by ERISA. (Docket No. 39, p. 4). Plaintiffs counter in their opposition that the Puerto Rico claims are not of the type intended to be preempted by the federal statute. (See Docket No. 60, p. 8).

Preemption under ERISA is "expansive in scope." Rosario-Cordero v. Crowley Towing &

Transp. Co., 46 F.3d 120, 122 (1st Cir. 1995). "[T]he express pre-emption provisions of ERISA are deliberately expansive, and designed to 'establish pension plan regulation as exclusively a federal concern.'" Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 45-46 (1987), *quoting* Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 523 (1981). Specifically, ERISA provides, with some exceptions not relevant here, that ERISA "supercede[s] any and all State laws[6] insofar as they ... *relate to* any employee benefit plan." 29 U.S.C. § 1144(a) (emphasis added). A state law, in turn, "'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96-97 (1983). Additionally, ERISA's preemptive force can displace *any* state cause of action, Pilot Life Ins., 481 U.S. at 44, "even if the law is not specifically designed to affect such plans, or the effect is only indirect." District of Columbia v. Greater Washington Bd. of Trade, 506 U.S. 125, 130 (1992), *quoting* Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 139 (1990).

Nevertheless, the Supreme Court in Mackey v. Lanier Collection Agency & Service, Inc., 486 U.S. 825 (1988), made clear that ERISA does not preempt every state law claim that has any connection to an ERISA plan. Id. at 832-34. "[L]awsuits against ERISA plans for run-of-the-mill state-law claims such as unpaid rent, failure to pay creditors, or even torts committed by an ERISA plan" are not preempted by ERISA. Id. at 833. In addition, "[c]ertain state laws which affect ERISA funds are not [preempted] because they have too 'tenuous, remote and peripheral' an impact on the fund to be preempted." Framingham Union Hosp., Inc. v. Travelers Ins. Co., 721 F.Supp. 1478, 1489 (D.Mass 1989), *citing* Mackey, 486 U.S. at 825 (garnishment laws not preempted); Aetna Life Ins. Co. v. Borges, 869 F.2d 142, 145 (2d Cir. 1989) (Connecticut escheat law not preempted); Hermann Hosp. v. MEBA Med. & Benefits Plan, 845 F.2d 1286, 1290 (5th Cir. 1988). "'[L]aws that have been ruled preempted are those that provide an alternative cause of action to employees to collect benefits protected by ERISA, refer specifically to ERISA plans and apply solely to them,

---

[6]"The term 'State law' includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C. § 1144(c)(1).

or interfere with the calculation of benefits owed to an employee. Those that have not been preempted are laws of general application–often traditional exercises of state power or regulatory authority–whose effect on ERISA plans is incidental.'" Travelers Ins., 721 F.Supp. at 1490, *quoting* Borges, 869 F.2d at 146.

Applying the authority set out in Mackey, Borges, and Pilot Life Ins., the district court in Travelers Ins. held that a state law claim for malpractice against a plan accountant was not preempted since it did not "relate to" the plan. Travelers Ins., 721 F.Supp. at 1490. The court found that the malpractice cause of action did not "purport[] to impact the administration of the Plan, provision of benefits or any like concern of ERISA. The possibility that the terms of ERISA or the Plan may be evidence of certain aspects of the claim does not mandate their preemption." Id.

The district court in Bourns, Inc. v. KPMG Peat Marwick, 876 F.Supp. 1116 (C.D.Cal. 1994), also found, but on different grounds, that state law claims against plan accountants were not preempted by ERISA. There, the court pointed out that "[p]lan auditors such as [PKF] are 'parties in interest' under ERISA, rather than fiduciaries." Id. at 1120, *citing* 29 U.S.C. § 1002(14)(B). This distinction is relevant here because the main thrust of plaintiffs' ERISA claims – with the exception of the claim against PKF – stems from alleged breaches of fiduciary duties (see Docket No. 1), and the fiduciary/non-fiduciary contrast has been highlighted as relevant to the preemption analysis in other cases, see, e.g., Miller v. Retirement Funding Corp., 953 F.Supp. 180, 183 (W.D.Mich. 1996) ("Plaintiff acknowledges that if defendant is held to be a 'fiduciary' under ERISA ... then its ERISA remedies are exclusive and the state law claims are preempted."). Accordingly, the court in Bourns held that although it is possible to bring a Section 1132 equitable claim against a plan auditor, "ERISA does not regulate the relationship between a plan (or a plan sponsor) and its accountant in manner [sic] that is comprehensive enough to justify ERISA preemption of all related state law causes of action." Id. at 1121. It then found that the state law accounting malpractice and breach of contract claims against the plan auditor were not preempted by ERISA. Id.

Here, the two rationales articulated in Travelers Ins. and Bourns weigh against finding that

ERISA preempts the state law claims against PFK.  I therefore recommend that PKF's motion to dismiss the Puerto Rico law claims as preempted by ERISA be **denied**.

## V.      Whether the Puerto Rico Tort Claims Have Prescribed

Watson Wyatt and PKF (referred to throughout this section as "co-defendants") move to dismiss the state law tort causes of action as time-barred on the ground that this lawsuit was filed more than a year after the statute of limitations began to run.  (Docket No. 38, p. 18).  Plaintiffs oppose co-defendants' argument by alleging ongoing injury, presumably as a justification to toll the statute of limitations.  (See Docket No. 60, p. 5; Docket No. 64, p. 10).

Plaintiffs' Tenth Cause of Action states claims for professional malpractice, misrepresentation, breach of contract, and tort against co-defendants.  (Docket No. 1, p. 20-21). These actions can be divided into two categories: tort and contract.[7]  Co-defendants' motions are aimed at the tort actions, so I will limit my discussion to those claims.

The statute of limitations for tort actions in Puerto Rico is one year.  31 L.P.R.A. § 5298; Arturet Velez v. R.J. Reynolds Tobacco Co., 429 F.3d 10, 12 (1st Cir. 2005).  The one year period begins to run once "the claimant is on notice of her claim; that is, notice of the injury, plus notice of the person who caused it."  Id. at 14 (internal quotations omitted); see also Rodriguez-Suris v. Montesinos, 123 F.3d 10, 13 (1st Cir. 1997).  "This does not require actual knowledge; it is enough that the would-be plaintiff had notice that would have led a reasonable person to investigate and so uncover the needed information."  Arturet Velez, 429 F.3d at 14; Rodriguez-Suris, 123 F.3d at 14-17.

In this case, plaintiffs found out, at the latest, that their employer had denied their Plan benefits on May 22, 2002.  (See Docket No. 1, ¶¶ 18-19; Docket No. 59, p. 2).  Plaintiffs were thus on notice at that time and had the duty to investigate to uncover any needed information to bring a claim, including the identity of any liable party.   Moreover, plaintiffs clearly were aware of their

---

[7]The tort claims include those for "professional malpractice," "misrepresentation," and "tort." The remaining claim is for breach of contract.

injury and of the identities of some parties when they filed suit in state court on  March 15, 2004. (Docket No. 34, Exh. H).  Therefore, absent tolling, plaintiffs' state law tort causes of action prescribed on March 15, 2005.

In this case, plaintiffs have made no argument that their tort claims against co-defendants have been tolled under Puerto Rico law, see 31 L.P.R.A. § 5303 ("[p]rescription of actions is interrupted by their institution before the courts, by extrajudicial claim of the creditor, and by any act of acknowledgment of the debt by the debtor") or by the doctrine of equitable tolling. Sánchez v. U.S., 134 F.Supp. 2d 211, 216 (D.P.R. 2001) (burden of proving equitable tolling of prescription period  rests on party seeking it).  The only argument plaintiffs make in their opposition motions is that they suffered some kind of ongoing injury.  (See Docket No. 60, p. 5; Docket No. 64, p. 10). Their assertions, however, contain no specific facts or citations to supporting authority. Furthermore, plaintiffs appear to argue only continuing ERISA violations by defendants, rather than violations of state tort law.  (See Docket No. 60, p. 5 ("continuous violation to GAAS and ERISA... allowing the continue deprivation of ERISA protected benefits under the Plan"); Docket No. 64, p. 10 ("Wyatt has the continuing duty to amend the plan returns of form 5500.... [T]hey are liable for misleading and contradictory statements as to whether the plan is an ERISA or church plan. Therefore the claim for their continuing representation is not time barred.")).  Since plaintiffs have failed to raise any cognizable argument with regard to tolling the statute of limitations, I consider any such argument to be waived.  See United States v. Zannino, 895 F.2d 1, 17 (1ˢᵗ Cir 1990) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation are deemed waived....  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to... put flesh on its bones"); Mitchell v. City of Moore, 218 F.3d 1190, 1199 (10th Cir. 2000) ("The district court was not obligated to comb the record in order to make [the plaintiff's] arguments for him."); Jackson v. ABC Nissan, Inc., 2006 WL 2256908, at *12 (D.Ariz. 2006) ("It is not the Court's duty to make Plaintiff's arguments for him...").

As a result, the statute of limitations prescribed, at the latest, on March 15, 2005, more than

a year and a half before plaintiffs filed the complaint in the present action on November 17, 2006. (See Docket No. 1). I therefore recommend that co-defendants' motions to dismiss the state law tort claims as time-barred be **granted**.

## VI.    PKF's Motion to Dismiss Based on Lack of Contract

PKF also moves to dismiss plaintiffs' breach of contract claim on the ground that the complaint does not adequately allege a cause of action. (Docket No. 39, p. 7). Plaintiffs' opposition contains only general references to contract law, but contains no responses to PKF's allegations. (Docket No. 60, p. 6, 10).

Under Puerto Rico law, the elements of a cause of action for breach of contract are: 1) a valid contract; and 2) a breach by one of the parties to the contract. F.C. Imports, Inc. v. First Nat'l Bank of Boston, 816 F.Supp. 78, 93 (D.P.R. 1993), *citing* Unisys P.R., Inc. v. Ramallo Brothers Pringing, Inc., 91 J.T.S. 69, 128 D.P.R. 842 (P.R. 1991). "In Puerto Rico, contracts are generally only valid between the parties who execute them," and "[a]ctions arising out of a contract can be prosecuted only by one contracting party against the other." F.C. Imports, 816 F.Supp. at 93, *citing* 31 L.P.R.A. § 3374; Suárez v. Hernández, 56 P.R.R. 262, 268-69 (1940); Pérez Sánchez v. Advisors Mortgage Investors, Inc., 1992 JTS 61, 130 D.P.R. 530 (1992). "A stranger to the contractual relationship may demand the fulfillment of a contract successfully only if the contract contains a stipulation in his favor." F.C. Imports, 816 F.Supp. at 93-94, *citing* A.L. Arsuaga, Inc. v. La Hood Constr., Inc., 90 P.R.R. 101, 107-08 (1964).

Here, plaintiffs make no factual allegation whatsoever in their complaint as to the existence of a contract between PKF and themselves, or the existence of any stipulation favoring them in a contract between PKF and a third party.[8] Rather, plaintiffs merely tack on a breach of contract claim

---

[8]Plaintiffs' factual allegations include the following: PKF assisted Bella Vista Hospital, Inc. – plaintiffs' employer – in wrongfully terminating the Plan (Docket No. 1, ¶ 25); PKF prepared Bella Vista Hospital's financial statements "including discrepancies and conflicting information," and that PKF allowed the employer's "intentional conduct to deprive participants of benefits accrued under the Plan," id. at ¶ 30; PKF "violated [its] duty to certify to the public and to the Plan participants the facts surrounding the accrual of benefits and the termination of the Plan with complete veracity and full disclosure, id. at ¶ 98; and PKF committed malpractice under Puerto Rico law "by their misrepresentation, breach of contract, fiduciary state trust law and tort," and that "[t]heir misconduct and malpractice

to their Tenth Cause of Action. (Docket No. 1, p. 20). Although all inferences must be made in the non-movant's favor in deciding a Rule 12(b)(6) motion to dismiss, the court need not accept "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." Aulson, 83 F.3d at 3. Moreover, this court must limit its focus to the allegations in the complaint. Litton Indus., 587 F.2d at 74. Accordingly, I find that, under the facts as pleaded, plaintiffs have not sufficiently pled a breach of contract action against PKF. I therefore recommend that PKF's motion to dismiss the breach of contract claim be **granted**.

**VII.    Whether the Statute of Limitations for the ERISA Claims has Run**

PKF next moves to dismiss plaintiffs' ERISA claims against it as time-barred, arguing that the applicable limitations period is one year. (Docket No. 39, 10-11).

ERISA provides a six-year limitations period for breach of fiduciary duty, 29 U.S.C. § 1113, but provides no specific statute of limitations for claims under 29 U.S.C. § 1132(a)(3) that do not allege breach of fiduciary duty. Here, plaintiffs' claim against PKF is not for breach of fiduciary duty, but rather, for equitable remedies resulting from PKF's violations of its duties under ERISA. Moreover, although federal law provides a default statute of limitations of four years for all federal statutes enacted after 1990, 28 U.S.C. § 1685, this law is inapplicable to ERISA, which was enacted in 1974. Thus, because plaintiffs' claim falls outside the scope of the federal statutes, this court must borrow the most analogous Puerto Rico limitations period. See Laurenzano v. Blue Cross and Blue Shield of Mass., Inc. Retirement Income Trust, 134 F.Supp.2d 189, 205 (D.Mass. 2001); Nazario Martinez v. Johnson & Johnson Baby Products, 184 F.Supp.2d 157, 159 (D.P.R. 2002); Gluck v. Unisys Corp., 960 F.2d 1168, 1179 (3d Cir. 1992).

In Laurenzano, the court held that "a cause of action under ERISA § [1132(a)(3)] to recalculate benefits already paid is most analogous to a contract claim and thus is subject to a six-year statute of limitations" under Massachusetts law. Laurenzano, 134 F.Supp.2d at 206. This court in Nazario Martinez found that, absent an allegation of breach of fiduciary duty, "the proper

---

contributed to the actual and proximate cause of the alleged damages in this case," id. at ¶ 99.

characterization of a claim under *§ 1132(a)(1)(B)* is as a contract action," and accordingly applied Puerto Rico's 15-year statute of limitations applicable to contract actions.  Nazario Martinez, 184 F.Supp.2d at 161-62 (emphasis added).

Here, however, the primary thrust of plaintiffs' claims against PKF is in tort, not contract. The only cause of action which specifically names PKF is the Tenth Cause of Action, which is a "State Cause of Action for Professional Malpractice, Misrepresentation, Breach of Contract and Tort." (Docket No. 1, p. 20).  Although the complaint lists breach of contract as a cause of action, plaintiffs fail to state a claim for breach of contract, as discussed *supra* under Subsection III.C of the Discussion. Plaintiffs' factual allegations also point to the same conclusion.[9]  Accordingly, this court must borrow Puerto Rico's one-year limitations period for tort actions.  31 L.P.R.A. § 5298; see also Arturet-Velez v. R.J. Reynolds Tobacco Co., 429 F.3d 10, 12 (1st Cir. 2005) ("Puerto Rico has a one-year statute of limitations for tort claims.").  As discussed in Discussion Subsection V, *supra*, the one-year state tort limitations period prescribed, at the latest, on March 15, 2005, more than a year and a half before plaintiffs filed the complaint in the present action on November 17, 2006. (See Docket No. 1).  I therefore recommend that PKF's motion to dismiss plaintiffs' ERISA claims against it as time-barred be **granted**.

## VIII.   Ruben Pérez's Motion for Partial Summary Judgment

Defendant Ruben Pérez moves this court for partial summary judgment on all claims of liability against him that arise from his alleged involvement with three organizations: the Antillian Union Conference of the Seventh Day Adventist; the General Conference of the Seventh Day Adventist; and the Retirement Committee of the General Conference of the Seventh Day Adventist Interamerican Division. (Docket No. 31, p. 2-3).  Plaintiffs submitted no opposition.

Mr. Pérez's motion for summary judgment lacks a material element which is required to be included in this district; "a separate, short, and concise statement of material facts, set forth in numbered paragraphs, as to which the moving party contends there is no genuine issue of material

---

[9]See footnote 8, *supra*.

fact to be tried." Local Rule 56(b).  Ordinarily, the failure to include such a statement of uncontested facts would be fatal to his motion.  See Linder v. Myers, 233 F.R.D. 81, 81-83 (D.P.R. 2005) (holding that plaintiffs' failure to comply with rules governing summary judgment – including Local Rule 56(e) – warranted granting of defendant's motion for summary judgment).

In this case, however, plaintiffs failed to submit an opposition to Mr. Pérez's motion, thus waiving an objection thereto and effectively conceding the averments made therein.  See Local Rule 7.1(b) ("Unless within ten (10) days after the service of a motion the opposing party files written objection thereto, incorporating a memorandum of law, the opposing party shall be deemed to have waived objection."); Local Rule 56(b) (listing specific requirements for opposing a motion for summary judgment); Tavárez v. Chamption Prods., Inc., 903 F.Supp. 268, 270 (D.P.R. 1995) ("Although [failure to comply with Local Rule 311.12] [now Local Rules 7.1(b) and 56] does not signify an automatic defeat, it launches the nonmovant's case down the road toward an easy dismissal.").  The court will therefore consider the motion on the merits.

The complaint lists Mr. Pérez as "the president of the ... Retirement Committee of the General Conference, treasurer of the Antillian Union Conference of the Seventh-Day, vice president of Bella Vista Hospital, Inc. and representative of the Conference of Seventh-Day Adventist." (Docket No. 1, ¶ 14).  Mr. Pérez concedes that he is the vice president of Bella Vista Hospital, Inc. (Docket No. 31, ¶ 5), but in a sworn statement that was incorporated by reference into his motion id. at ¶ 4, he denies any involvement whatsoever with the other three organizations (Docket No. 30, Exh. E).  In the same sworn statement, Mr. Pérez states that, to his knowledge, no organization of the name Antillian Union Conference of the Seventh Day Adventist exists.  (Docket No. 30, Exh. E).  Having made these assertions in a sworn statement, Mr. Pérez has met his initial burden of identifying those portions of the evidence that he believes demonstrate an absence of a genuine issue of material fact.  See Crawford-El, 523 U.S. at 600 n.22.  "The First Circuit has repeatedly held that the district court is justified in deeming one party's submitted uncontested facts to be admitted when the other party fails to file an opposition in compliance with Local Rule 56."  Marina Aguila v. Den Caribbean, Inc., 490 F.Supp.2d 244, 246 (D.P.R. 2007), *citing* Fontanez-Nunez v. Janssen Ortho

Torres v. Bella Vista Hosp., Inc.                                                    **Page 27**
Civil No. 06-2158 (JAG/BJM)
Report and Recommendation

LLC, 447 F.3d 50, 55 (1st Cir. 2006), <u>Torres-Rosado v. Rotger-Sabat</u>, 335 F.3d 1, 4 (1st Cir. 2003),

*and* <u>Corrada Betances v. Sea-Land Serv., Inc.</u>, 248 F.3d 40, 43-44 (1st Cir. 2001); <u>see also</u> Local

Rule 56(e) (declaring facts not properly controverted "shall be deemed admitted").  I therefore

recommend that Ruben Pérez's motion for partial summary judgment be **granted**.

**CONCLUSION**

In view of the foregoing, I recommend that BPPR's Rule 12(b)(1) motion for summary

judgment and its request that the court decline to entertain the declaratory judgment action (Docket

No. 34) be **DENIED**; that Watson Wyatt's Rule 12(b)(1) motion for summary judgment and its Rule

12(b)(6) motion to dismiss the causes of action against it involving breach of fiduciary duties

(Docket No. 38) be **DENIED**; that Watson Wyatt's Rule 12(b)(6) motion to dismiss the state law

tort claims (Docket No. 38) be **GRANTED**; that PKF's motion to dismiss all claims against it

(Docket No. 39) be **GRANTED**; that the motion to dismiss by Bella Vista Hospital, Inc. and Mr.

Ruben Pérez (Docket No. 45) be **DENIED**; and that Ruben Pérez's motion for partial summary

judgment (Docket No. 31) be **GRANTED**.

The parties have ten (10) business days to file any objections to this report and

recommendation.  <u>See</u> Local Rule 72(d); 28 U.S.C. § 636(b)(1).  Failure to file same within the

specified time waives the right to appeal this order.  <u>Henley Drilling Co. v. McGee</u>, 36 F.3d 143,

150-151 (1st Cir. 1994); <u>United States v. Valencia</u>, 792 F.2d 4, 6 (1st Cir. 1986); <u>see also</u> <u>Paterson-</u>

<u>Leitch Co. v. Mass. Mun. Wholesale Elec. Co.</u>, 840 F.2d 985, 991 (1st Cir. 1988) ("Systemic

efficiencies would be frustrated and the magistrate's role reduced to that a mere dress rehearser if

a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the

second round").

**IT IS SO RECOMMENDED**.

In San Juan, Puerto Rico, this 23rd day of August, 2007.

S/*Bruce J. McGiverin*
BRUCE J. McGIVERIN
United States Magistrate Judge