IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

OLGA TORRES and PEDRO BONILLA,

     **Plaintiff(s)**

       **v.**

BELLA VISTA HOSPITAL, INC., <u>et</u>
<u>at</u>.,

     **Defendant(s)**

**CIVIL NO.** 06-2158(JAG)

## OPINION AND ORDER

GARCIA-GREGORY, D.J.

    Pending before the Court are: 1) Watson Wyatt & Company's ("Watson Wyatt") Motion to Dismiss (Docket No. 38), 2) Banco Popular de Puerto Rico's ("BPPR") Motion to Dismiss (Docket No. 34), 3) Pannell, Kerr & Foster's ("PKF") Motion to Dismiss (Docket No. 39), 4) Bella Vista Hospital, Inc's ("the Hospital") and Ruben Perez's (collectively "Defendants") Motion to Dismiss (Docket No. 45), and 5) Ruben Perez's Motion for Partial Summary Judgement (Docket No. 31). For the reasons set forth below, the Court **DENIES** in part and **GRANTS** in part the Motions.

## FACTUAL AND PROCEDURAL BACKGROUND

1. <u>The Hospital</u>

    The Hospital is a non-profit corporation organized under the laws of Puerto Rico and operated by the General Conference of the Seventh Day Adventist Church, a corporation authorized to do

Civil No.  06-2158(JAG)                                      2

business in the Commonwealth of Puerto Rico. (Docket No. 78). The main purposes of the Hospital is to provide medical facilities to persons in need of such services, and to spread the gospel as is understood by the Seventh Day Adventist Church. (See Docket No. 34, Exh. A). The Hospital is operated by the Unión Adventista Puertorriqueña[1], which reports to the Interamerican Division of the General Conference of the Seventh Day Adventist. (Docket No. 78).

According to the Hospital's by-laws, the Seventh Day Adventist Church delegates its responsibilities for running the Hospital to the Hospital's Board of Trustees. The Hospital's by-laws state that half of the members of the Board of Trustees must be members of the Seventh Day Adventist Church. Moreover, the Hospital's by-laws also provide that four (4) of the nineteen(19) members of the board of Trustees must be members of the Unión Adventista Puertorriqueña. (Docket No. 34, Exh. BB). Currently, the President and the Vice-President of the Finance Committee are officers of the Unión Adventista Puertorriqueña. (Docket No. 78). However, none of the members of the Hospital's Board of Trustees is appointed by the Church.

2. The Plan

On January 1, 1982, the Hospital created an Employee Pension

---

[1] The Hospital's by-laws state that the Hospital is operated by the Antillian Union Conference of Seven Day Adventists. (Docket No. 34, Exh. BB). However, the Hospital clarified that no entity by that name exists and the correct name is Unión Adventista Puertorriqueña. (Docket No. 78).

Civil No.   06-2158(JAG)                                          3

Benefit Plan known as the Bella Vista Hospital, Inc. Pension Plan ("the Plan"). The Plan was co-administered by the Unión Adventista Puertorriqueña and the Interamerican Division of the General Conference of the Seventh Day Adventist, who was designated as the administrator and named fiduciary of the Plan. (Docket No. 78).

A Retirement Committee was in charge of the general administration of the Plan and was responsible for carrying out its provisions. The members of the Retirement Committee were appointed by the Hospital's Board of Trustees and could be removed by the Board at any time. (Docket No. 34, Exh. A).

Even though the Plan had been subject to three different set of rules, (<u>See</u> Docket No. 1 ¶ 34), only the 1982 rules are on record before the Court. (<u>See</u> Docket No. 59, Exh. 2). Among other things, the 1982 rules established that at the time of the Plan's creation it was subject to ERISA and that the Hospital, acting through its Board of Trustees, could delegate the administration of the Plan to any person or entity. (Docket No. 59, Exh. 2).

On July 29, 1983, a deed of trust was executed, establishing the Bella Vista Hospital Pension Trust ("the Trust"). (Docket No. 34, Exh. B). The Trust named Banco de Ponce as trustee, but BPPR became the successor in interest as trustee. (Docket No. 34).

On January 24, 1996, the Internal Revenue Service ("IRS") issued a determination letter stating that the Hospital was "exempt from Federal income tax under section 501(a) of the Internal

Civil No.  06-2158(JAG)                                          4

Revenue Service ("IRS"). (Docket No. 34, Exh. C). In 1997, the
Hospital filed a Form 5500 along with its federal income tax
return, which had an attached notation entitled "Pension Plan" that
stated: "The Plan is subject to the provisions of the Employee
Retirement Income Act of 1974 (ERISA)." (Docket No. 40, Exh. 5, 6).

     In 2000, following a request by the Hospital, the IRS issued
a ruling, which stated that the Plan was "a Church Plan within the
meaning of section 414(e) of the Code." Said ruling also stipulates
that the "ruling is directed only to the taxpayer who requested it"
and that "[s]ection 6110(k)(3) of the Code provides that it may not
be used or cited by others as precedent." (Docket No. 34. Exh. A).

     On August 14, 2003, the Plan was terminated and liquidated.
(Docket No. 34, Exh. D). Two corporations whose service were
instrumental in the termination and liquidation of the Plan were:
Watson Wyatt and PKF.

     Watson Wyatt was a corporate service provider to the Plan.
Said company provided actuarial and consulting services regarding
the establishment, administration, termination and liquidation of
the Plan's benefits, the valuation of the Plan's assets and
provided certain documents and rules for the Plan. (Docket Nos. 1,
38).

     PKF is a certified accounting firm that acted as a service
provider to the Plan and to the Hospital. The firm's services
included accounting and financial consulting regarding the

Civil No.  06-2158(JAG)                                                    5

administration, operation and termination of the Plan.

    3. <u>Plaintiffs</u>

    Olga  Torres  and  Pedro  Bonilla  ("Plaintiffs")  were  both
employed by the Hospital and Participated in the Plan. (Docket No.
1). Plaintiff Bonilla became disabled in 1998 and plaintiff Torres
became  disabled  in  1999.  As  a  result  of  the  termination  and
liquidation of the Plan, Plaintiffs did not receive the benefits
they would have received under the Plan had it remained covered by
ERISA. (Docket No. 59). On 2004, Plaintiffs filed a lawsuit in
state  court  against,  the  Hospital,  BPPR,  the  Antillian  Union
Conference of the Seventh Day Adventist, the Retirement Committee
of the General Conference, the General Conference of Seventh Day
Adventist, and the Plan, to recover lost benefits. (Docket 34, Exh.
H).

    On November 17, 2006, Plaintiffs filed a complaint in this
Court against: 1)the Hospital, 2) BPPR, 3) The Antillian Union
Conference of the Seven Day Adventist[2] 4) the Retirement Committee
of  the  General  Conference  of  the  Seventh-Day  Adventist
Interamerican  Division, 5) the General Conference of Seventh Day
Adventist, 6) Bella Vista Hospital Pension Plan and Trust, 7) the
Adventist of the Seven Day Interamerican Division Retirement Plan,
8) Bella Vista Hospital, Inc. 401 K Plan and Trust, 9) Watson

_____

    [2]

Defendants stated in their "Opposition to Report and Recommendation
of U.S. Magistrate Judge" that the correct name for said entity is
Union Adventista Puertorriqueña. (<u>See</u> Docket No. 78).

Civil No.  06-2158(JAG)                                           6

Wyatt, 10) PKF, 11) Miguel Ramos and the conjugal partnership between him and his spouse, and 12) Ruben Perez and the conjugal partnership between him and his spouse for declaratory relief; violations of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 et seq. ("ERISA"); and Puerto Rico law claims for professional malpractice, misrepresentation, breach of contract, and tort. (Docket No. 1). The state court lawsuit was stayed pending resolution of this action. (See Docket Nos. 34, Exh. CC, 59)

On March 7, 2007, co-defendant Ruben Perez filed a Motion for Partial Summary Judgement. In said motion, Ruben Perez stated that in the complaint he is named as: the President of the Antillian Retirement Committee of the General Conference, the Treasurer of the Antillian Union Conference of the Seventh Day, representative of the Conference of the Seventh Day Adventist and Vice-President of Bella Vista Hospital, Inc. Ruben Perez conceded that he is the Vice-President of Bella Vista Hospital, Inc. but denied that he has any authority or representative capacity over the other organizations, which Plaintiffs allege he is part of. As such, Ruben Perez contends that all claims of liability against him that arise from the following organizations should be dismissed. (Docket No. 31). Plaintiffs did not oppose Ruben Perez's Motion for Partial Summary Judgement.

On March 12, 2007, BPPR filed a Motion to Dismiss under

Civil No.  06-2158(JAG)                                    7

Fed.R.Civ.P.12(b)(1), alleging that this Court does not have subject matter jurisdiction over this action because Bella Vista Hospital, Inc. Pension Plan ("the Plan") is a church plan and, therefore, is not covered by ERISA. Alternatively, BPPR argued that the Court should not exercise its discretion to entertain the action for declaratory relief. (Docket No. 34). Plaintiffs opposed BPPR Motion to Dismiss (Docket No. 59) and BPPR filed a reply to Plaintiffs' opposition (Docket No. 67).

Defendants Watson Wyatt, PKF, the Hospital, Ruben Perez each filed Motions to Dismiss in which they also contend that the Plan is not subject to ERISA because it is a church plan. (Docket Nos. 38, 39, 45). Plaintiffs opposed said Motions to Dismiss, (Docket Nos. 60, 64), and Defendants subsequently replied to Plaintiffs' opposition. (Docket Nos. 69, 72).

In its Motion to Dismiss, Watson Wyatt also moved pursuant to Rule 12(b)(6) to dismiss the causes of action for breach of fiduciary duties on the ground that it is not a plan fiduciary. Furthermore, Watson Wyatt contended that Plaintiffs' state tort causes of action should be dismissed as time barred on the grounds that this lawsuit was filed more than a year after the statute began to run. (Docket No. 38).

PKF, together with Watson Wyatt, also moved to dismiss Plaintiffs' state law tort causes of action as time barred. Moreover, PKF moved to dismiss Plaintiffs' breach of contract claim

on the ground that the complaint did not adequately allege a cause of action. Finally, PKF sought the dismissal of Plaintiffs' ERISA claims against it arguing that they were time barred. (Docket No. 39). All of Defendants' Motions to Dismiss were referred to Magistrate-Judge Bruce J. McGiverin for a Report and Recommendation.

On August 23, 2007, Magistrate-Judge Bruce J. McGiverin issued his Report and Recommendation. First, the Magistrate Judge decided to treat Defendants' Motions to Dismiss, on the grounds that the Plan is a church plan, as Motions for Summary Judgement. The Magistrate Judge determined to convert Defendants' Motions to Dismiss into Motions for Summary Judgment because ERISA provided the basis for both subject matter jurisdiction and the causes of action. Furthermore, the Magistrate-Judge noted that the facts relevant to the merits of Plaintiffs' claims are also the facts relevant to the determination of subject matter jurisdiction. After analyzing said Motions to Dismiss (now converted into motions for summary judgement), the Magistrate Judge determined that Defendants failed to prove that the Plan was a church plan. Consequently, the Magistrate-Judge recommended that Defendants' Motions to Dismiss be denied.

Second, the Magistrate-Judge did not agree with BPPR's contention that the Court should not exercise its discretion to entertain the action for declaratory relief. The Magistrate-Judge

recommended that the Court entertain Plaintiffs' declaratory judgement action because it is based entirely on federal law and because the state court had already taken action to prevent duplication of judicial efforts. Third, the Magistrate-Judge recommended that the Court deny Watson Wyatt's Rule 12(b)(6) Motion to Dismiss based on the allegation that it was not a plan fiduciary. The Magistrate-Judge noted that in accordance with the Rule 12(b)(6) standard, the Court must accept as true all well-pleaded factual claims and Plaintiffs clearly alleged that Watson Wyatt was a plan fiduciary that exercised its discretion in its management and administration of the Plan.

Fourth, the Magistrate-Judge determined that Plaintiffs' Puerto Rico tort and contract causes were not preempted by ERISA. Consequently, the Magistrate-Judge recommended that PKF's Motion to Dismiss on these grounds be denied. Fifth, the Magistrate-Judge considered Watson Wyatt and PKF's contention that Plaintiffs' state law tort causes were time barred. The Magistrate-Judge agreed with Watson Wyatt and PKF's allegation and recommended that their Motion to Dismiss the state law tort claims as time barred be granted.

Sixth, the Report and Recommendation analyzed PKF's allegation that Plaintiffs' breach of contract claim should be dismissed because the complaint does not adequately allege a cause of action. The Magistrate-Judge concluded that Plaintiffs' pleadings were not sufficient to bring forth a breach of contract action against PKF.

Seventh, the Magistrate-Judge recommended that PKF's Motion to Dismiss, on the grounds that Plaintiffs' ERISA claim against them was time barred, be granted. Finally, the Magistrate-Judge recommended that Defendant Ruben Perez's unopposed Motion for Partial Summary Judgement be granted. (Docket No. 73).

On August 20, 2007, Defendants the Hospital and Mr. Ruben Perez as Vice President of the Hospital objected the Magistrate-Judge's conclusion that the Plan is not a church plan. (Docket No. 78). On August 21, 2007, Watson Wyatt also filed their objections to the Report and Recommendation. Specifically, Defendant Watson Wyatt alleged that the Plan is a church plan exempted from ERISA coverage and that it is not a fiduciary under ERISA. In addition, Watson Wyatt contends that if the Court determines that it is not a plan fiduciary, Plaintiffs' ERISA claims against it should be dismissed as they are time barred. (Docket No. 80). The Court will address each of the Defendants' objections.

**STANDARD OF REVIEW**

1. <u>Motion to Dismiss Standard.</u>

Under Fed.R.Civ.P. Rule 12(b)(1), a defendant may move to dismiss an action for lack of subject matter jurisdiction. As courts of limited jurisdiction, federal courts must narrowly construe jurisdictional grants. See <u>e.g.</u>, <u>Alicea-Rivera v. SIMED</u>, 12 F.Supp.2d 243, 245 (D.P.R. 1998). Consequently, the party asserting jurisdiction has the burden of demonstrating the

existence of federal jurisdiction. See Murphy v. United States, 45
F.3d 520, 522 (1st Cir. 1995); Diaz Serrano v. Caribbean Records
Inc., 270 F.Supp.2d 217 (D.P.R. 2003). When deciding whether to
dismiss a complaint for lack of subject matter jurisdiction, the
Court "may consider whatever evidence has been submitted, such as
... depositions and exhibits." See Aversa v. United States, 99 F.3d
1200, 1210 (1st Cir. 1996).

    Motions brought under Rule 12(b)(1) are subject to the same
standard of review as Rule 12(b)(6) motions. Negron-Gaztambide v.
Hernandez-Torres, 35 F.3d 25, 27 (1st Cir. 1994); Torres Maysonet
v. Drillex, S.E., 229 F.Supp.2d 105, 107 (D.P.R. 2002). Under Rule
12(b)(6), dismissal is proper "only if it clearly appears,
according to the facts alleged, that the plaintiff cannot recover
on any viable theory." Gonzalez-Morales v. Hernandez-Arencibia, 221
F.3d 45, 48 (1st Cir. 2000)(quoting Correa-Martinez v. Arrillaga-
Belendez, 903 F.2d 49, 52 (1st Cir. 1990)). Under Rule 12(b)(1),
dismissal would be proper if the facts alleged reveal a
jurisdictional defect not otherwise remediable.

    In Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955 (2007), the
Supreme Court recently held that to survive a motion to dismiss
under Rule 12(b)(6), a complaint must allege "a plausible
entitlement to relief." Rodriguez-Ortiz v. Margo Caribe, Inc.,, 490
F.3d 92, 95-96 (1st Cir. 2007)(quoting Twombly, 127 S. Ct. at
1967). While Twombly does not require heightened fact pleading of
specifics, it does require enough facts to "nudge [plaintiffs']

Civil No.  06-2158 (JAG)                                    12

claims across the line from conceivable to plausible." <u>Twombly</u>, 127

S. Ct. at 1974. Accordingly, in order to avoid dismissal, the

plaintiff must provide the grounds upon which his claim rests

through factual allegations sufficient "to raise a right to relief

above the speculative level." <u>Id.</u> at 1965.

The Court accepts all well-pleaded factual allegations as

true, and draws all reasonable inferences in plaintiff's favor.

<u>See</u> <u>Correa-Martinez v. Arrillaga-Belendez</u>, 903 F.2d 49, 51 (1st

Cir. 1990). The Court need not credit, however, "bald assertions,

unsupportable conclusions, periphrastic circumlocutions, and the

like" when evaluating the Complaint's allegations. <u>Aulson v.</u>

<u>Blanchard</u>, 83 F.3d 1, 3 (1st Cir. 1996). When opposing a Rule

12(b)(6) motion, "a plaintiff cannot expect a trial court to do his

homework for him." <u>McCoy v. Massachusetts Institute of Tech.</u>, 950

F.2d 13, 22 (1st Cir. 1991). Plaintiffs are responsible for putting

their best foot forward in an effort to present a legal theory that

will support their claim. <u>Id.</u> at 23 (<u>citing</u> <u>Correa Martinez</u>, 903

F.2d at 52). Plaintiffs must set forth "factual allegations, either

direct or inferential, regarding each material element necessary to

sustain recovery under some actionable theory." <u>Goolev v. Mobil Oil</u>

<u>Corp.</u>, 851 F.2d 513, 514 (1st Cir. 1988).

2. <u>Summary Judgment Standard</u>

The court's discretion to grant summary judgment is governed

by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 states,

Civil No.  06-2158 (JAG)                                    13

in pertinent part, that the court may grant summary judgment only
if "the pleadings, depositions, answers to interrogatories, and
admissions on file, together with the affidavits, if any, show that
there is no genuine issue as to any material fact and that the
moving party is entitled to judgment as a matter of law."
Fed.R.Civ.P. 56(c); See also Santiago-Ramos v. Centennial P.R.
Wireless Corp., 217 F.3d 46, 52. (1st Cir. 2000).

    Summary judgment is appropriate if "there is no genuine issue
as to any material fact and ... the moving party is entitled to a
judgment as a matter of law." See Fed.R.Civ.P. 56(c).  The party
moving for summary judgment bears the burden of showing the absence
of a genuine issue of material fact. See Celotex Corp. v. Catrett,
477 U.S. 317, 323 (1986).

    Once a properly supported motion has been presented before the
court, the opposing party has the burden of demonstrating that a
trial-worthy issue exists that would warrant the court's denial of
the motion for summary judgment. For issues where the opposing
party bears the ultimate burden of proof, that party cannot merely
rely on the absence of competent evidence, but must affirmatively
point to specific facts that demonstrate the existence of an
authentic dispute. See Suarez v. Pueblo Int'l, Inc., 229 F.3d 49
(1st Cir. 2000).

    In order for a factual controversy to prevent summary
judgment, the contested facts must be "material" and the dispute

Civil No.  06-2158 (JAG)                                              14

must be "genuine". "Material" means that a contested fact has the
potential to change the outcome of the suit under governing law.
The issue is "genuine" when a reasonable jury could return a
verdict for the nonmoving party based on the evidence. <u>See</u> <u>Anderson</u>
<u>v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). It is well
settled that "[t]he mere existence of a scintilla of evidence" is
insufficient to defeat a properly supported motion for summary
judgment." <u>Id.</u> at 252. It is therefore necessary that "a party
opposing summary judgment must present definite, competent evidence
to rebut the motion." <u>Maldonado-Denis v. Castillo-Rodriguez</u>, 23
F.3d 576, 581 (1st Cir. 1994).

     In making this assessment, the court "must view the entire
record in the light most hospitable to the party opposing summary
judgment, indulging in all reasonable inferences in that party's
favor." <u>Griggs-Ryan v. Smith</u>, 904 F.2d 112, 115 (1st Cir. 1990).
The court may safely ignore "conclusory allegations, improbable
inferences, and unsupported speculation." <u>Medina-Muñoz v. R.J.</u>
<u>Reynolds Tobacco Co.</u>, 896 F.2d 5, 8 (1st Cir. 1990).

     3) <u>Standard for Reviewing a Magistrate-Judge's Report and</u>
        <u>Recommendation</u>

     Pursuant to 28 U.S.C. §§ 636(b)(1)(B); Fed.R.Civ.P. 72(b); and
Local Rule 503; a District Court may refer dispositive motions to
a United States Magistrate Judge for a Report and Recommendation.
<u>See</u> <u>Alamo Rodriguez v. Pfizer Pharmaceuticals, Inc.</u>, 286 F.Supp.2d

Civil No.  06-2158 (JAG)                                        15

144, 146 (D.P.R. 2003). The adversely affected party may "contest
the Magistrate Judge's report and recommendation by filing
objections 'within ten days of being served' with a copy of the
order." <u>United States of America v. Mercado Pagan</u>, 286 F.Supp.2d
231, 233 (D.P.R. 2003) (quoting 28 U.S.C. §§ 636(b)(1)). If
objections are timely filed, the District Judge shall "make a de
novo determination of those portions of the report or specified
findings or recommendation to which [an] objection is made."
<u>Rivera-De-Leon v. Maxon Eng'g Servs.</u>, 283 F. Supp. 2d 550, 555
(D.P.R. 2003). The Court can "accept, reject, or modify, in whole
or in part, the findings or recommendations made by the
magistrate," however, if the affected party fails to timely file
objections," the district court can assume that they have agreed to
the magistrate's recommendation'." <u>Alamo Rodriguez</u>, 286 F.Supp.2d
at 146 (quoting <u>Templeman v. Chris Craft Corp.</u>, 770 F.2d 245, 247
(1st Cir. 1985).

**DISCUSSION**

1. <u>Defendants' Motion to Dismiss on the Grounds that the Plan</u>
    <u>    is a Church Plan</u>

Defendants Watson Wyatt, the Hospital and Ruben Perez all
claimed in their objection to the Report and Recommendation that
the Plan is a church plan not subject to ERISA. As mentioned above,
the Magistrate Judge determined to convert Defendants' Motions to
Dismiss into Motions for Summary Judgment. (Docket Nos. 78, 80).

Civil No.  06-2158 (JAG)                                            16

A court can convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case. Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995); see also Redmon v. United States, 934 F.2d 1151, 1155 (10th Cir. 1991). The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case. Holt, 46 F.3d at 1003.

However, while such a conversion is required in other Circuits, see e.g. Holt, 46 F.3d at 1003; this Circuit provides more flexibility. Gonzalez v. United States, 284 F.3d 281, 287 (1st Cir. 2002)("a Rule 12(b)(1) motion is sometimes transformed into a Rule 56 motion where jurisdictional issues cannot be separated from the merits of the case"). Indeed, the First Circuit has noted that when "jurisdictional facts... are inextricably intertwined with the merits of the case... the court may defer resolution of the jurisdictional issue until the time of trial." Valentin v. Hosp. Bella Vista, 254 F.3d 358, 363 n.3 (1st Cir. 2001); see also Hollingsworth v. United States, 2005 U.S. Dist. LEXIS 33224, 20-21 (D. Me. 2005).

In the instant case, the jurisdictional question is intertwined with the merits of the case because ERISA provides the basis for both subject matter jurisdiction and the causes of

Civil No.  06-2158 (JAG)                                              17

action.  Furthermore,  the  facts  relevant  to  the  merits  of
Plaintiffs' claims are also the facts relevant to the determination
of  subject  matter  jurisdiction.  However,  in  accordance  with  our
Circuit's holding in <u>Valentin</u> the conversion of Defendants' Motions
to Dismiss into Motions for Summary Judgement is not mandatory.

        Permitted to do so by <u>Valentin</u>, this Court defers resolution
of the jurisdictional issue. There is an apparent dispute as to the
fact if the Plan is a church plan or a plan subject to ERISA. As
such, this Court is not prepared to rule as a matter of law that
the  Plan  is  a  church  plan  not  subject  to  ERISA.  This  is
particularly true when the parties have made differing claims as to
whether the plan constitutes a church plan or a plan subject to
ERISA. Therefore, this Court concludes that this matter should be
presented in a format better designed for a full airing of the
issues, after the parties have an opportunity to narrow areas of
factual  dispute.  Consequently,  the  Court  hereby  modifies  the
Magistrate-Judges findings in the Report and Recommendation that
the Plan is not a church plan. As a result, Defendants' Motions to
Dismiss, (Docket Nos. 34, 38,39, 45), on the grounds that the Plan
is a church plan are to be denied.

        2. <u>The Plan Fiduciary</u>
        Defendant Watson Wyatt avers in its objections to the Report
and Recommendation that it is not a fiduciary of the Plan. Watson
Wyatt has informed this Court that the services that it provided to

the Hospital regarding the Plan included the following: 1) conducting actuarial valuation for accounting purposes, 2) providing administrative support, which included the computation of pension benefits, 3) drafting government forms and providing advice to the Hospital when it sought a ruling from the IRS that stated that the Plan was a church plan, and 4) providing support and advice to the Hospital when the Plan was liquidated. (Docket No. 80). However, Plaintiffs alleged, in their complaint, that Watson Wyatt also "managed the Plan operation since its inception," and "acted as a Plan fiduciary by exerting discretionary authority and control regarding the management and administration of defendant defined benefit Plan." (Docket No. 1, ¶ 11).

ERISA reserves fiduciary liability for "named fiduciaries," defined either as those individuals listed as fiduciaries in the plan documents or those who are otherwise identified as fiduciaries pursuant to a plan-specified procedure. 29 U.S.C. § 1102(a)(2); see also Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 18 (1st Cir. 1998). However, the statute also extends fiduciary liability to functional fiduciaries, who are persons that act as fiduciaries (though not explicitly denominated as such) by performing at least one of several enumerated functions with respect to a plan. Beddall, 137 F.3d at 18. Under 29 U.S.C.S. § 1002(21)(A), a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control

Civil No.  06-2158 (JAG)                                    19

respecting management of such plan or exercises any authority or
control respecting management or disposition of its assets, (ii) he
renders investment advice for a fee or other compensation, direct
or indirect, with respect to any moneys or other property of such
plan, or has any authority or responsibility to do so, or (iii) he
has any discretionary authority or discretionary responsibility in
the administration of such plan.

     The key determinant of whether a person qualifies as a
functional fiduciary is whether that person exercises discretionary
authority in respect to, or meaningful control over, an ERISA plan,
its administration, or its assets (such as by rendering investment
advice). See Beddall, 137 F.3d at 18; O'Toole v. Arlington Trust
Co., 681 F.2d 94, 96 (1st Cir. 1982); see also 29 C.F.R. § 2509.75-
8, at 571 (1986). The exercise of physical control or the
performance of mechanical administrative tasks generally is
insufficient to confer fiduciary status, a person is a plan
fiduciary only "to the extent" that he possesses or exercises the
requisite discretion and control. 29 U.S.C. § 1002(21)(A); see also
Beddall, 137 F.3d at 18.

     An ERISA fiduciary, properly identified, must employ within
the defined domain "the care, skill, prudence, and diligence under
the circumstances then prevailing that a prudent man acting in a
like capacity and familiar with such matters would use." 
Id.(quoting 29 U.S.C. § 1104(a)(1)(B)). The fiduciary should act

Civil No.  06-2158 (JAG)                                    20

"solely in the interest of the participants and beneficiaries," and
his  overarching  purpose  should  be  to  "provide  benefits  to  the
participants  and  their  beneficiaries"  and  to  "defray[]  reasonable
expenses  of  administering  the  plan."  Id.(quoting  29  U.S.C.  §
1104(a)(1)).   A   fiduciary   who   fails   to   fulfill   these
responsibilities  is  "personally  liable  to  make  good  to  [the]  plan
any  losses  to  the  plan  resulting  from... such  breach."  Id.(quoting
29 U.S.C. § 1109(a)).

        Plaintiffs clearly allege in their complaint that Watson Wyatt
was  a  plan  fiduciary  because  according  to  them,  it  exerted
discretionary  authority  and  control  regarding  the  management  and
administration of the Plan. Since Watson Wyatt's Motion to Dismiss
is  a  12(b)(6)  motion,  the  Court  must  accept  this  well-pleaded
factual  allegations  as  true,  and  draw  all  reasonable  inferences  in
Plaintiffs'  favor.  Said  factual  allegation  taken  as  true  would  be
sufficient  to  determine  that  Watson  Wyatt  is  a  functional
fiduciary,  an  element  necessary  to  sustain  recovery  under
Plaintiffs'  theory.  As  such,  Plaintiffs  factual  allegations  are
sufficient  to  avoid  dismissal  because  they  raise  their  alleged
right  to  relief  above  the  speculative  level.[3]  Consequently,  this
Court  disagrees  with  Watson  Wyatt's  objections.  Watson  Wyatt's

_____

        [3]

In order to avoid dismissal, the plaintiff must provide the grounds
upon which his claim rests through factual allegations sufficient
"to raise a right to relief above the speculative level." Twombly,
127 S. Ct. at 1965.

Civil No.  06-2158 (JAG)                                    21

Motion to Dismiss is hereby denied. (Docket No. 38).

Finally, as mentioned above, the only Defendants that filed
objections to the Report and Recommendation were Watson Wyatt and
the Hospital together with its Vice-President Ruben Perez. As such,
the Court accepts those parts of the Report and Recommendation,
which are not modified by this Opinion and Order and to which
Defendants did not object.[4]

CONCLUSION

For the reasons stated above, the Court hereby **MODIFIES** in
part the Magistrate-Judges findings regarding Defendants' Motion to
Dismiss and **ADOPTS** the rest of the Magistrate-Judge's Report and
Recommendation. (Docket No. 73). As a result, the Court **DENIES**
Defendants BPPR, the Hospital and Ruben Perez's Motions to Dismiss.
(Docket Nos. 34, 45). The Court **GRANTS** Ruben Perez's Motion for
Partial Summary Judgement. (Docket No. 31).

Regarding PKF's Motion to Dismiss, the Court **GRANTS** the Motion

---

[4]

In conducting its review, the Court is free to "accept, reject, or
modify, in whole or in part, the findings or recommendations made
by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). See Templeman
v. Chris Craft Corp., 770 F.2d 245, 247 (1st Cir. 1985); Alamo
Rodriguez v. Pfizer Pharmaceuticals, Inc., 286 F. Supp.2d 144, 146
(D.P.R. 2003). Hence, the Court may accept those parts of the
report and recommendation to which the Defendants do not object.
See Hernandez-Mejias v. General Elec., 428 F. Supp.2d 4,6 (D. P.R.
2005) (citing Lacedra v. Donald W. Wyatt Detention Facility, 334 F.
Supp.2d 114,125-126 (D.R.I. 2004)).

Civil No.  06-2158 (JAG)                                         22

on the grounds that Plaintiffs' ERISA and state law tort causes of
action are time barred and that Plaintiffs failed to adequately
allege a breach of contract claim against PKF. However, the Court
**DENIES** PKF's Motion because Plaintiffs tort and contract causes of
action are not preempted by ERISA. (Docket No. 39). The Court also
**DENIES** Watson Wyatt's Motion to Dismiss in which Defendant contends
it is not a plan fiduciary and that the Plan is a church plan.
Nonetheless, the Court **GRANTS** Watson Wyatt's Motion to Dismiss on
the grounds that Plaintiffs' state law tort claims are time barred.
(Docket No. 38).

        Accordingly, Plaintiffs' ERISA and breach of contract claims
against PKF is dismissed with prejudice. Furthermore, Plaintiffs'
state law tort claims against PKF and Watson Wyatt are dismissed
with prejudice.

        IT IS SO ORDERED.

        In San Juan, Puerto Rico, this 29th day of October, 2007.


                              S/Jay A. Garcia-Gregory
_____
                              JAY A. GARCIA-GREGORY
                              United States District Judge