IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Olga Torres and Pedro Bonilla<br>Plaintiffs<br><br>v.<br><br>The Antillian Union Conference of Seventh Day Adventist, The Retirement Committee of the General Conference of Seventh Day Adventist Interamerican Division, The General Conference of the Seventh Day Adventist, Bella Vista Hospital Pension Plan And Trust, The Adventist of the Seventh Day Interamerican Division Retirement Plan, Bella Vista Hospital, Inc. 401k Plan, The Watson Wyatt Company, Pannell, Kerr & Foster, Miguel Ramos and Ruben Perez,<br>Defendants. | CIVIL NO.: 06-2158 (JAG)<br><br><br><br><br><br><br>Complaint For Declaratory Judgment, ERISA |

**PLAINTIFFS' MOTION TO SET ASIDE JUDGMENT FOR FRAUD ON THE COURT AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RULE 60(d) (3)**

TO THE HONORABLE COURT:

COME NOW, Plaintiffs, Olga Torres and Pedro Bonilla, through the

undersigned legal counsel and respectfully aver and pray as follows:

## I. *INTRODUCTION*

Plaintiffs, Olga Torres and Pedro Bonilla, move this Court under Federal

Rule of Civil Procedure 60(d)(3) for an order vacating the Final Judgment of

1

United States District Court for Puerto Rico in this case (Docket 166) entered against them on May 21, 2009 because said judgment was procured by some of the defendants and obtained through fraud on the Court. The District Court dismissed this case for lack of subject matter jurisdiction in favor of defendants. Such judgment was obtained by  Bella Vista Hospital due to their failure to disclose essential information requested of them by plaintiffs as part of the discovery in the case, by it Executive Director, Mr. Jesus Nieves, lying in sworn statements submitted to the Court in order to quash a properly served summons; see **Exhibit 1**, *Sworn Statement of Mr. Jesus Nieves,* (Docket 30), and by denying the existence of a 401(k)  plan covered by the Employee Retirement Income Security Act of 1974, as amended, 29 USC Section 1001 et seq. ("ERISA"), a fact alleged in the complaint  that gave the federal Court subject matter jurisdiction over this case. All these facts, if had not been withheld by defendants, would had given plaintiffs the opportunity to continue their claim in the federal district court.

Defendant, Bella Vista Hospital, falsely answered the complaint when it denied the existence of a 401(k) plan maintained by the hospital and the transfer of funds between such 401(k) and the pension plan; see **Exhibit** 2, *Answer to Complaint* (Docket 101).

As indicated in the 401(k) plan rules and summary plan description provided recently to plaintiffs by the Oriental Bank & Trust, such plan is governed by

ERISA. It is Plan Number 001, maintained by Bella Vista Hospital Inc.; see **Exhibit 3,** *401(k) plan document executed on January 4, 2001,* **Exhibit 4***, 401(k) plan document executed on August 17, 2005,***Exhibit 5***, Summary Plan Description for Bella Vista Hospital Saving Plan.* This plan, as alleged in the complaint filed in this court, would had given the District Court the ground for federal jurisdiction over the Declaratory Judgment complaint filed by plaintiffs.

Defendants, Bella Vista and the Trustee, Banco Popular, incurred in fraud to the court in several instances. First, by denying the existence on an ERISA covered 401(k) plan when responded to paragraph 10 of the Complaint; see **Exhibit 6**, *Banco Popular Answer to Complaint* (Docket 94). Second, by denying the transfer of fund alleged the paragraph 10 of the complaint that occurred under the trust held by Banco Popular, see **Exhibit 2 and 6**, transactions that, as occurred, subjected the plans and the trustee to the provision of ERISA. Third, when the Bella Vista Executive Director, Mr. Jesus Nieves, stated in his sworn statement that there was no 401(k) plan established by Bella Vista Hospital; see **Exhibit 1**. Mr. Nieves lied under oath in a sworn statement that was submitted by Bella Vista Hospital to support the motion to quash the summons served to the 401(k) plan (Docket 30).

Defendant's fraudulent acts not only prevented the District Court from retaining subject matter jurisdiction over this case, but continues in state court case as follow: As of this date, Bella Vista Hospital has not disclosed to plaintiffs the

rules for the Adventist Plan nor has it presented the Watson Wyatt actuarial report, containing the method used by Bella Vista Hospital to calculate the pension accrued benefit and values used to liquidate the Pension Plan. Bella Vista has alleged in court that they do not have such documents nor have made any effort to obtain such documents.

In regard to the plan rules for the 401(k) plan, it was not until October 2, 2014, that plaintiffs for first time received a copy of the 401(k) plan rules. Such documents were provided by the Oriental Bank and Trust for the Bella Vista Saving Plan in the current State Court proceeding, an ERISA covered 401(k) plan since 2001. Mr. Nieves was the plan ERISA fiduciary who appears signing the 401(k) plan document as member of the 401(k) Plan Administrative Committee. See **Exhibit 3,** at page 3 and **Exhibit 4,** at page 5. The 401(k) plan documents were executed on January 4, 2001 and August 17, 2005.

This motion is made pursuant to *Federal Rule of Civil Procedure* 60(d)(3) and shall be based upon this Motion, a Memorandum of Points and Authorities, and Exhibits attached thereto, the complete files and records of this action, and such other and further oral and documentary evidence as may be presented at the hearing on this motion.

## II. BACKGROUND

The Initiation of the Case in the Puerto Rico State Court

Plaintiff's legal action for collection of disability benefits was originally filed in the Puerto Rico State Court in October 28, 2003. An Amended Complaint was filed in March 16, 2004. Plaintiffs filed the action in the state court based on the information provided to plan participants that the Bella Vista Hospital Pension Plan (the "Pension Plan") was a "church plan", as such term is defined under ERISA.

During the proceeding in the state court, Bella Vista Hospital Inc. failed to disclose to plaintiffs the information requested as part of the discovery process. In essence, during all the proceedings, not only in the state court, but also during the subsequent procedures followed before the US District Court, defendants failed to disclose plaintiffs information about other retirement plan maintained by the hospital, the Bella Vista Hospital Saving Plan, an ERISA covered 401(k) plan that participates in the Oriental Group CODA Profit Sharing Plan Master Plan the (the Master Plan). The Master Plan is a custody arrangement whereby Oriental Bank manages ERISA pension fund assets for a group of plans under a single trustee account. It is an investment trust designed to hold commingled funds, invest and distribute the plan assets of ERISA plans sponsored and maintained by a group g

employers. It was established by Deed No. 2 entitled "Deed of Trust," dated May 21, 1993, executed before Notary Public Carlos Rodríguez-Cintrón.

The Master Plan invests in pooled separate accounts (SPAs) that permit commingled investment of plan assets of such employers benefit. For that reason, all employee benefit plans participating in the Master Plan are subject to the provisions of ERISA. In this case, to the extent that Bella Vista Saving 401(k) plan participates in this pool of investments commingling ERISA plan funds from different employers, it becomes an ERISA covered plan.

Also, the Bella Vista 401(k) plan summary plan description (SPD) provided to participants, states at page 8 of the SPD, that "as participant in the Bella Vista Hospital Saving Plan (the "Plan), you are entitled to certain rights and protection under the Employee Retirement Income Security Act of 1974 (ERISA); see **Exhibit 5**. Therefore, plaintiffs' content is that any plan that would claim the "church plan" exemption under ERISA but that participates in the Master Plan must be conformed to comply and will subject to the provisions of ERISA.

Oriental Bank and Trust, as trustee for the Bella Vista 401(k) in the letter sent to counsel for plaintiffs indicated that they revised the Opinion and Order issued in this case on May 21, 2009 and that Oriental Trust has no involvement with the Pension Plan; *see Annex D* to **Exhibit 7**, letter of *November 12, 2014 in response to claim for clarification.* However, we consider that to the extent the

6

401(k) plan received a transfer of fund from the asset of the pension plan as of December 31, 2003, there was a consolidation of assets and plan liabilities in 401(k) plan, which became responsible for the payment of plaintiff's benefit accrued under the Pension Plan.

Considering that such transfer of funds were processed and held by Banco Popular as trustee for the trust account, 91-001800109, both Banco Popular and Oriental Bank are ERISA co-fiduciaries of the 401(K) and will respond under ERISA for their management of plaintiffs' accrued benefits. Since that date, Banco Popular, as co-trustee for BellaVista 401(k), became subject to the provision of ERISA. Based on that Plaintiff's disability benefits claimed in this case are ERISA protected benefit. Also, that to the extent that such plans lost their qualification status under the Puerto Rico Treasury Department, the Master plan Trust is also disqualified for its tax favored status under the Puerto Rico Internal Revenue Code of 2011. For that reason, we consider that there is an effect on the Master Plan for the disqualification of the Bella Vista Hospital Saving Plan.

Most Circuits have held that ERISA's "fraud or concealment" applies when there is a "separate conduct undertaken by the fiduciary to hide the fraud". As explained to the court here below, defendants hided not only the existence of the 401(k), but also the transfer of fund from the pension plan to the 401(k), all this within the trust held by the Pension Plan with Banco Popular as follow:

7

On December 31, 2003 the amount of $64, 680.08  deposited in the Bella Vista Hospital  Pension Plan Trust  (account 91-001800109) held by Banco Popular, as trustee for the Pension Plan, was transferred to the Southwest Bella Vista Saving Plan ( also known as the Bella Vista Saving Plan or Bella Vista 401(k) Plan; see **Exhibits 8**, *Statement of Account No. 91-0018-01-9  from January 1, 2003 to December, 2003, BPPR as trustee for Hospital Bella Vista Pension Trust;* **Exhibits 9**, *Statement of Account  No. 91-0018-01-9 from January 1, 2004 to December, 2004 , BPPR as trustee for Hospital Bella Vista del Suroeste;* and    **Exhibits 10**, *Statement of Account No. 91-0018-01-9  from January 1, 2005 to December, 2005, BPPR as trustee for Hospital Bella Vista del Suroeste*.  Therefore, since January 1, 2004 the Bella Vista Hospital Pension Plan Trust with Banco Popular began holding asset from the Hospital Bella Vista del Suroeste, the Bella Vista Hospital 401 (k) plan. Since that date the Pension Plan Trust became subject to ERISA.   That transaction was held under the trust agreement with Banco Popular.  Later, during 2004, the amount of $338,796.17 was contributed to account 91-001800109 on behalf of the 401(k); see **Exhibit 9** In that regard, from 2004 and 2006 the 401(k) had two trustees for the plan, Oriental Bank and Trust and Banco Popular de Puerto Rico.

The Initiation of the Case in the Federal Action

After three (3) years of litigation facing defendants not disclosing the information requested by plaintiffs,  and allegation that their claim was  subject to ERISA, plaintiffs filed for a stay in the state court and filed on November 17, 2006 a Complaint for Declaratory Judgment in  the United States Federal Court.  At that moment the only documents plaintiffs had about the plans to sustain their claims were  the 1982 pension plan rules and a letter dated December 16, 1998, indicating a replacement  of  plans to a defined contribution plan.  There was no indication in such letter as to which of the plans maintained by the hospital was replaced, or if in effect any of the plan was truly replaced.

Plaintiffs filed suit against several codefendants for declaratory relief; violation of  ERISA  provisions, seeking a declaration of ERISA coverage, a computation of the benefit due to them, restitution, punitive damages and other equitable relief as a result of their wrongful conduct; See *Complaint and Declaratory Judgment* (Docket No. 1).

Plaintiffs moved their claims to the District Court praying for a determination as to whether the pension plan was an ERISA covered plan, to clarify and enforce their ERISA rights to disability benefits under any of the plans maintained by the hospital to which their benefits may have been transferred or merged, and to determine the effect of the alleged pension plan termination.

9

At page 22 of the Complaint, paragraph 8 (Docket 1),  plaintiffs moved the Court determine whether the Adventist Plan or any other plan maintained by the employer to which plaintiff's rights to benefits may have been transferred was an ERISA Plan.

At page 23 of the Complaint, paragraph 9, plaintiffs moved the court to declare that the Adventist Plan and/or the 401(k) Plan are ERISA covered plans to the extent that such plans may provide for the ERISA protected benefit accrued by plaintiffs as participants of the Pension Plan.

After inquiring about the role of Oriental Bank in regard to defendant Bella Vista Hospital Pension Plan and the Retirement Plan ("Plan de Jubilación"), see *Annex B to* **Exhibit 7,**  this attorney was provided with the above mentioned 401(k) plan rules document. Counsel was informed that in fact, a 401(k) plan exists, that such plan was offered to the hospital employees as an ERISA covered plan, and obtained copy of the Pension Plan trust account statement for 2003, 2004 and 2005, indicating that part of the pension plan funds were transferred to such 401(k) plan and maintained by Banco Popular under the pension plan trust; see **Exhibits 8, 9, 10.**   These statements sustain  what  plaintiffs alleged  in paragraph 10 of the complaint (Docket1),  but  at that moment  lacked of  supporting  documentation and   explanation  from  Banco  Popular and Hospital Bella Vista  to confirm  and sustain this allegation. For said reason, Bella Vista Hospital denied such fact in its

Answer to the Complaint and plaintiffs had no means at that moment to sustain the allegation contained in the complaint. Based on that Plaintiffs filed on November 5, 2004 an Administrative Claim for Benefit Clarification and Disclosure under the Master Plan; see **Exhibit 11,** *Claim for Benefit Clarification and Disclosure under the Plan.* Such claim was responded by Oriental Bank, as trustee for the Bella Vista 401(k) Plan on November 12, 2014*;* **see Exhibit 7,** *Claim's Adm.Record, Annex D , Letter of November 12, 2014*. This motion under Rule 60(d) (3) asks this Court to utilize its "historic power of equity to set aside a fraudulently begotten judgment" in order to uphold the "preservation of the integrity of the judicial process." <u>*Chambers v. NASCO, Inc.*</u>, 501 U.S. 32, 44 (1991).

<u>The Facts Regarding the Fraud on the Court</u>

Defendant's fraudulent acts began since the beginning of this legal claim in the state court. Based on their allegation that the Pension Plan is a "church plan", Bella Vista Hospital Inc. articulated a fraudulent scheme, failing to disclose information requested during the discovery process, denying the fact that the 401(k) plan existed and lying under oath in sworn statements, defendants convinced the court to dismiss the complaint for lack of subject matter jurisdiction.

Defendants denied the existence of the 401(k) plan to quash the summons served correctly to the 401(k) plan through the employer, Bella Vista Hospital (Docket 30). At that moment, plaintiffs were unable to oppose to the motion to

quash the summons served on the 401(k) because they had no document to sustain the existence of the 401(k) plan announced by Bella Vista Hospital to its employees. All efforts by plaintiffs in that regard had futile result. At that time, it was impossible to plaintiffs' counsel to obtain a document to sustain the existence of the 401(k) plan announced by the hospital.

Based on that false written testimony contained in Mr. Nieves' sworn statement supporting the motion to quash (Docket 30), the summons served on the 401(k) plan was quashed by the Court.

During the case in federal court, defendants Bella Vista Hospital and Banco Popular failed to provide plaintiffs the information requested of them during the discovery process; see *letter dated March 3, 2008 to attorney Martinez Texidor, First Request to Bella Vista for Production of Document, First Request to Banco Popular for Production of Document and Bella Vista Initial Disclosures*. Plaintiffs were requesting the rules documents for the other retirement plans maintained by the hospital, including the trust financial statements and information about the transfer of fund between such plans, but such information never was disclosed by such defendants. Had all of this information been provided to plaintiffs when requested, plaintiffs would have provided the Court with documents to demonstrate that plaintiffs' disability benefits as claimed in the complaint were protected by ERISA.

Such difficulties in processing the claim due to defendants' failure to disclose information about plaintiffs' rights under the retirement plans offered during their employment constitute "egregious,""pervasive" and "reprehensible" discovery abuses by defendants.

The Resolution of the Federal Action

Defendants filed motions to dismiss under Rule 12(b) (1) challenging subject matter jurisdiction and under 12(b) (6) arguing that the facts alleged did not justify recovery. Judgment was entered against Plaintiffs for lack of subject matter jurisdiction on May 21, 2009 (Docket 166).

Plaintiffs contend that said judgment was procured through fraud on the court in that defendant, Bella Vista Hospital Inc., denied that it was maintaining an ERISA covered 401 (k) plan, failing to disclose evidence about ERISA covered transactions during discovery with the intent to deprive the District Court of jurisdiction over the case.

The Status of the State Action

After the federal dismissal, plaintiffs 'claims and discovery continued at the state court level. But all efforts to obtain information through the discovery process to sustain their claim were unsuccessful.  Defendants continued the scheme of lies creating tremendous burden on plaintiffs by not providing the documents and information requested by plaintiff during the discovery process.

13

Approximately two (2) months ago, plaintiff, Pedro Bonilla informed this attorney that an employee of the hospital commented to him that it was the Oriental Bank, the financial entity that was providing services to the retirement plans maintained by hospital, not the Banco Popular.

This attorney immediately arranged and requested the production from Oriental Bank of all documents related to the services they were providing to Bella Vista Hospital.  Oriental produced all plan documents maintained for the 401(k) plan since 2001.

The fact is that Oriental Bank has been providing Bella Vista with a 401(k) plan, as alleged in paragraph 10 of the complaint filed in the federal court.  This fact that was specifically denied by Bella Vista Hospital in its Answer to the Complaint (Docket 101).

After inquiring about the role of Oriental Bank in regard to defendant, Bella Vista Hospital Pension Plan, this attorney was informed that such plan was offered to the hospital employees as an ERISA covered plan, and obtained copy of the trust account statement for 2003 and 2004, indicating that part of the pension plan funds were transferred to such 401(k) plan and maintained by Banco Popular under the pension plan trust. Both plans were consolidated as plan 001.  This is exactly what plaintiffs alleged in paragraph 10 of the complaint filed in 2006, but at that moment lacked the plan documents and trust statement to sustain it. Bella Vista

14

Hospital denied such fact in its Answer to the Complaint filed on March 25, 2008 (Docket 101) and plaintiffs had no means at that moment to sustain the allegation contained in the complaint.

This motion under Rule 60(d) (3) moves this Court to utilize its "historic power of equity to set aside a fraudulently begotten judgment" in order to uphold the "preservation of the integrity of the judicial process." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991).

The fraud worked upon this Court in this matter was comprised of numerous acts of misconduct. Although recklessness is all that need be shown to establish a fraud on the Court under the controlling authorities, the vast majority of the conduct here was clear, intentional, and willful. Together, the acts amounted to a pervasive fraud driven by the goal of prevailing at whatever the cost.

Plaintiffs contend that counsel for defendants committed fraud on the court by the following actions and deliberate omissions that harmed the integrity of the judicial process.

An attorney is "the representative not of an ordinary party to a controversy, but of a sovereignty . . . [whose] interest in a . . . prosecution is not that it shall win a case, but that justice shall be done." *Berger v. United States, 295 U.S. 78, 88 (1935)* (emphasis added); see also *Prof'l Responsibility: Report of the Joint Conference, 44 A.B.A.J. 1159, 1218 (1958)*. The standard applies with equal force

to both criminal and civil cases. See *Freeport-McMoRan Oil & Gas Co. v. FERC, 962 F.2d 45, 47 (D.C. Cir. 1992)*; see also *A.B.A. Code of Prof'l Responsibility 7-14; Model Code of Prof'l Responsibility EC 7-14 (1981)*

One species of fraud upon the court occurs when an "officer of the court" perpetrates fraud affecting the ability of the court or jury to impartially judge a case. *See* <u>In re Intermagnetics America, Inc.,</u> *926 F.2d 912, 916 (9th Cir. 1991)*; see *also* <u>Alexander v. Robertson,</u> *882 F.2d 421, 424 (9th Cir.1989).*

"[F]raud upon the court includes both attempts to subvert the integrity of the court and fraud by an officer of the court." *Intermagnetics, 926 F.2d at 916.*

The Ninth Circuit has stated that fraud on the court is "an unconscionable plan or scheme which is designed to improperly influence the court in its decision." <u>*Abatti v. Commissioner,*</u> *859 F.2d 115, 118 (9th Cir.1988)* (internal quotation omitted).

The United States Supreme Court has stated that lawyers are officers of the Court. See <u>In re Snyder,</u> *472 U.S. 634, 643(1985)* (courts have inherent authority to discipline lawyers which "derives from lawyer's role as an officer of the court which granted admission."

It is well settled that the failure of a lawyer to disclose evidence during discovery constitutes fraud on the court and there is no time limitation for vacating a judgment for fraud on the court.  Fraud on the court is distinct from other types

16

of fraud in that it is generally applied only in the most egregious cases. For example, the Ninth Circuit Court of Appeals stated in *Toscano v. Comm'r, 441 F.2d 930, 933-34 (9th Cir. 1971)* that the term "fraud upon the court" must be construed narrowly in connection with Rule 60.

The Ninth Circuit Court of Appeals in the case of *Pumphrey v. K.W. Thompson Tool Co., 62 F.3d 1128, 1131 (9th Cir. 1995)* held that a lawyer's failure to disclose evidence during discovery constituted fraud upon the court.  And the key issue is not where the alleged fraud prejudiced the defendant, the key issue is whether the fraud harms the integrity of the judicial process.  "…the inquiry as to whether a judgment should be set aside for fraud upon the court under Rule 60 (d)(3) focuses not so much in terms of whether the alleged fraud prejudiced the opposing party but more in terms of whether the alleged fraud harms the integrity of the judicial process." *Pumphrey v. K.W. Thompson Tool Co., 62 F.3d at 1133* (citing text).

It is well settled that courts have inherent equity power to vacate judgments obtained by fraud. *Chambers v. NASCO, Inc., 501 U.S. 32, 44 (1991)*; see also *In re Levander, 180 F.3d 1114, 1118-19 (9th Cir. 1999)*. Defendants' counsel failed to disclose and omitted the existence of an ERISA Covered 401(k).

As part of these instances of fraudulent misconduct, plaintiffs first include a brief survey of applicable case authority to aid in this Court's review.

17

### III. *MEMORANDUM OF AUTHORITIES IN SUPPORT OF RULE*

### *60(d)(3)*

This motion is focused on a fraud perpetrated upon two (2) courts, the *United States District Court for Puerto Rico and the Puerto Rico State Court*, in an effort by defendants to prevent the judicial process from functioning in the usual manner involving perjury or nondisclosure so fundamental that it undermined the workings of the adversary process itself. *United States v. Estate of Stonehill, 660 F.3d 415, 445 (9th Cir. 2011).* Importantly, this motion, brought under Federal Rule of Civil Procedure 60(d)(3), is about "far more than an injury to a single litigant," it is about "a wrong against the institutions set up to protect and safeguard the public, institutions in which fraud cannot complacently be tolerated consistently with the good order of society." *Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 245 (1944).* This inherent power allows a federal court to vacate its own judgment upon proof that a fraud has been perpetrated upon the court. Moreover, a court has the power to conduct an independent investigation in order to determine whether it has been the victim of fraud. As the Supreme Court commanded in *Hazel-Atlas*, "the public welfare demands that the agencies of public justice be not so impotent that they must always be mute and helpless victims of deception and fraud." *Hazel-Atlas at 246.*

18

Motions under Rule 60 (d)(3) are granted if the defendants can, by clear and convincing evidence, establish "that species of fraud which does or attempts to defile the court itself, or is a fraud perpetuated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *In re Levander, 180 F.3d 1114 (9th Cir. 1999)* (finding that perjury and nondisclosure that defiled the bankruptcy court amounted to a fraud on the court).

A party can be found to have engaged in a scheme to defraud the court and "improperly influence" its decisions through "the use of misleading, inaccurate, and incomplete responses to discovery requests, the presentation of fraudulent evidence, and the failure to correct false impressions created by witness testimony." *Pumphrey v. K.W. Thompson Tool Co., 62 F.3d 1128, 1132 (9th Cir.1995)* (finding that defendant committed a fraud on the court by failing to disclose the existence of favorable evidence to the plaintiff and other violations of the rules of discovery and professional responsibility).

The Ninth Circuit has faithfully followed the Supreme Court's mandate that misconduct resulting in a fraud on the court shall not be tolerated. It has recognized that such fraud "corrupts the legitimacy of the truth-seeking process" and "defiles the sanctity of the court and the confidence of all future litigants." *Dixon v. C.I.R., 316 F.3d 1041, 1046-47 (9th Cir. 2003)* (finding a fraud on the court based on the

actions of two IRS attorneys in covering up relevant evidence, including sitting by silently as witnesses presented testimony the attorneys knew to be false).

Further, the Chief Judge of the Ninth Circuit has poignantly acknowledged that there is currently an "epidemic of violations" and other examples of prosecutorial misconduct "abroad in the land" and that only judges can put a stop to it," referring to the Brady Violation stated in the US Supreme Court case, _Brady vs. Maryland, 373 US 83(1963)_. When judges allow prosecutors and other litigants to get away with such behavior, it "erodes the public's trust in our justice system, and chips away at the foundational premises of the rule of law." _U.S. v. Olsen, 737 F.3d 625_. When such transgressions are acknowledged yet forgiven by the courts, we endorse and invite their repetition." _Id. at 632_.

The Court's assessment of this motion should include related factors. First, the conduct addressed in this motion that focused on depriving plaintiffs of their ERISA protected benefits through fiduciaries actors, who are required to operate under a higher standard of care in light of ERISA fiduciary duties. Second, private pension benefits violations threaten the financial security of millions of citizens, as well as the economic viability of entire communities. The fraud upon this Court therefore threatens not only the judicial process but also all citizens who are exposed to the threat of future ERISA fiduciary duties violations. Finally, and most importantly, Plaintiffs perceive this Court as a victim of the conduct detailed

herein, as it has neither had the chance to fully assess the trust it naturally placed in ERISA fiduciaries.

The circumstances presented by this motion provide three separate layers of support for finding a fraud upon this Court: (1) pervasive and egregious corruption at the core of the underlying origin and cause of plaintiffs illegal forfeiture and benefits denial, (2) the repeated suppression or omission of key facts by defendants legal counsels in a manner which seriously altered this Court's ability to properly adjudicate this matter, and (3) radically dissimilar results in identical actions, in part occasioned by the underlying fraud upon the Court. On their own, each of these circumstances has caused grave damage to the integrity of our judicial process, and each separately draws support from the Supreme Court and Ninth Circuit for finding fraud upon the Court. Here, each of these layers has been laminated into an egregious fraud that goes well beyond what is required for this Court to exercise its inherent powers so as to effectuate justice and preserve the public's confidence in our judicial system.

This Court's inherent powers exist in part to "further the pursuit of achieving complete justice by enabling the court to suspend those judgments whose enforcement leads to inequitable results." *In re Levander, 180 F.3d 1114, 1118 (9th Cir. 1999)* (quoting *Hazel–Atlas Glass Co.*) The conduct of counsels for defendants constitutes a fraud which "defiles the court" and which was

"perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *Alexander v. Robertson, 882 F.2d 421, 424 (9th Cir. 1989)*. Accordingly, Plaintiffs respectfully request that this Court terminate this matter for fraud upon the Court and vacate the judgment.

## IV.    LEGAL STANDARD

Final judgments are generally considered binding and are accorded a degree of finality. However, Rule 60(d)(3) of the Federal Rules of Civil Procedure provides a mechanism for a court to set aside a final judgment or order recognizing and codifying the inherent power of the court to "set aside a judgment for fraud on the court." *see Hazel-Atlas, 322 U.S. at 244*.

While most motions under Rule 60(b), including those for fraud, must be made no more than a year after the entry of a judgment***, there are no such time restrictions when filing a motion for fraud upon the court under Rule 60(d)***. *See Rule 60(c)(1); Stonehill, 660 F.3d at 443-44*.

Rule 60(d) supports two distinct procedural avenues to seek to set aside a judgment procured by fraud on the court: either by filing an independent action or through a motion. *See Wright & Miller, 11 Fed. Prac. & Proc. § 2870 (3d ed.)*. The ability of a party to choose the preferred procedural route is demonstrated in Ninth Circuit cases analyzing allegations of fraud on the court. For example, in

22

*Pumphrey v. K.W. Thompson Tool Co., 62 F.3d 1128, 1130 (9th Cir. 1995)*, the court analyzed an independent action for fraud on the court, while in *England v. Doyle, 281F.2d 304 (9th Cir. 1960)*, the court analyzed a motion to set aside on the grounds of fraud on the court. Moreover, because a court's power to set aside a judgment for fraud on the court arises from the long-recognized "historic power in equity to set aside fraudulently begotten judgments," the substance of a party's filing related to fraud on the court controls over its form. *Hazel-Atlas, 322 U.S. at 245; U.S. v. Buck, 281 F.3d 1336, 1342 (10th Cir. 2002)* ("no purpose would be served by denying…relief on the ground that the motion mistyped the plea for relief…[t]he substance of the plea should control, not the label"). In fact, because the form of the filing is of no regard, the court has been understood to have the power to treat a motion as an independent action or vice versa. *Zone Sports Center, Inc. LLC, et. al. v. Red Head, Inc., No. 11-CV-00634-JST, 2013 WL 2252016, at \*6 (N.D. Cal. May 22, 2013)* ("The Court's power, recognized under Rule 60(d), comes from its "historical power equity" and its need "to manage [its] own affairs so as to achieve the orderly and expeditious disposition of [its] cases" and "further the pursuit of achieving complete justice." *In re Levander, 180 F.3d 1114, 1118 (9th Cir. 1999)*. Court has the authority to construe plaintiffs' "request as either a motion brought under Rule 60(b) or as an independent action under Rule 60(d) because the substance of the relief sought is what controls, not the label of the

submissions."); <u>*Buck*</u>*, 281 F.3d at 1341-42* (finding that the federal courts have the power to construe a motion for fraud on the court "either as an independent action….or, because there are no formal requirements for asserting a claim of fraud on the court, as a pleading invoking the court's inherent power to grant relief for fraud upon the court"); *Wright & Miller, 11 Fed. Prac. & Proc. § 2868 (3d Ed.)* ("A party is not bound by the label used in the party's papers. A motion may be treated as an independent action or vice versa as is appropriate.").

In determining whether to vacate a judgment pursuant to this inherent power, courts must exercise "restraint and discretion," <u>*United States v. Estate of Stonehill*</u>*, 660 F.3d 415, 443 (9th Cir. 2011)*, weighing the "deep-rooted policy in favor of the repose of judgment" against "enforcement of [a] judgment [that] is manifestly unconscionable," *Hazel-Atlas, 322 U.S. at 244-45*. Courts have sometimes struggled to define what qualifies as a fraud on the court. See *Stonehill, 660 F.3d at 444*. Courts and commentators have acknowledged that not all "fraud connected with the presentation of a case to a court' is . . . necessarily a fraud on the court." Id. *(quoting 11 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2870 (2d ed. 1987)*. Rather, fraud on the court occurs when the conduct either "defiles the court or is perpetrated by officers of the court." <u>*Dixon v. C.I.R.*</u>*, 316 F.3d 1041, 1046 (9th Cir. 2003)*.

For these reasons, fraud on the court must be "established by clear and convincing evidence." *Stonehill, 660 F.3d at 443 (quoting England v. Doyle, 281 F.2d 304, 310 (9th Cir. 1960)).*

When the conduct harms "the integrity of the judicial process . . . and the fraud rises to the level of 'an unconscionable plan or scheme which is designed to improperly influence the court in its decisions,' the court "not only can act, [but] should." *Id*. In its most recent published opinion addressing fraud on the court, the Ninth Circuit stated that "the relevant inquiry is not whether fraudulent conduct 'prejudiced the opposing party,' but whether it 'harm[ed] the integrity of the judicial process.' *Stonehill, 660 F.3d at 444* (quoting *Alexander v. Robertson, 882 F.2d 421, 424 (9th Cir. 1989).*

Accordingly, "to show fraud on the court, plaintiffs must demonstrate, by clear and convincing evidence, an effort by defendants to prevent the judicial process from functioning in the usual manner. They must show more than the perjury or nondisclosure of evidence, unless that perjury or nondisclosure was so fundamental that it undermined the workings of the adversary process itself. Importantly, fraud upon the court may be found in an entire course of conduct by a party, rather than a single act of fraud directed at the court. For example, in *Stonehill*, the Ninth Circuit analyzed seven categories of evidence cited as fraud upon the court. *See 660 F.3d at 446-51*. The Ninth Circuit first examined each

category of evidence in isolation to determine whether it constituted fraud upon the court, and determined that each category, on its own, did not qualify. In that case the court proceeded to examine the allegations of fraud on the court as a whole, analyzing whether, taken together, the misrepresentations and nondisclosures "change[d] the story . . . presented to the district court." *Id. at 452*. While the Ninth Circuit ultimately found that the conduct, considered in its totality, did not constitute fraud upon the court because it did not go to the central issues of the case, *Stonehill* makes it clear that a court is not limited to analyzing each alleged instance of misconduct in a vacuum, but must also consider whether a party's entire course of conduct rises to the level of undermining the judicial process sufficient to constitute fraud upon the court. *Id. at 454*; see also *Pumphrey v. K.W. Thompson Tool Co., 62 F.3d 1128, 1129-32 (9th Cir. 1995)* (analyzing whether the defendant's course of conduct throughout the case constituted fraud on the court).

## V.    *LEGAL ANALYSIS*

Fraud Has Been Committed on this Court.

The pervasive and coordinated misconduct of defendants counsels, whether viewed in isolated parts or as a whole, clearly and convincingly reflects "an effort by defendants to prevent the judicial process from functioning 'in the usual manner,'" and also "involved perjury or nondisclosure so fundamental that it

26

undermined the workings of the adversary process itself." <u>Stonehill</u>, *660 F.3d at 445*.

Here, defendants obfuscated the truth at every turn, a process which began with their denial and cessation of plaintiffs' pension benefits and their intention manifested in 2003 to terminate the Pension Plan retroactively to December 31, 1998. They joined in the process by concealing ambiguous resolutions and documents, not providing responses to interrogatories, allowing witnesses to lie under oath and by denials in their answer to the Complaint. Whether analyzed independently or collectively, these acts establish a fraud upon this Court.

<u>The Fraud on the Court Warrants to set aside the Judgment dismissing the entire legal action</u>.

The Supreme Court has held that dismissal of the plaintiff's case is appropriate, and indeed necessary, when the plaintiff commits fraud upon the court. *See Hazel-Atlas, 322 U.S. at 250* (stating that "[t]he total effect of all this fraud [by plaintiff] . . . calls for nothing less than a complete denial of relief"); see also Chambers, 501 U.S. at 44-45 ("Outright dismissal of a lawsuit . . . is a particularly severe sanction, yet it is within the court's discretion."). The Ninth Circuit has also stated that "courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the law.

A number of courts have taken a much nuanced approach to examining fraud on the court, and have looked at whether the actions of officers of the court throughout litigation affected the course of the case to such an extent that. A judgment should never have been entered, or would not have been entered had the court known of the fraud upon it. For example, in *Southerland v. Irons*, the Sixth Circuit upheld a district court's decision to vacate a consent judgment. The district court's order stated: "While a lawyer should represent his client with singular loyalty that loyalty obviously does not demand that he act dishonestly or fraudulently; on the contrary, his loyalty to the court, as an officer thereof, demands integrity and honest dealings with the court. And when he departs from that standard in the conduct of a case he perpetrated a fraud upon the court." *Id. at 733 (quoting Moore's Federal Practice 513 (1975)*. The Sixth Circuit thus found the district court did not abuse its discretion in vacating the judgment which resulted from the settlement agreement. <u>*Southerland v. Irons*</u>, *628 F.2d 978, 980 (6th Cir. 1980).*

We exercise the power to vacate judgments for fraud on the court "with restraint and discretion," Chambers, 501 U.S. at 44, and only when the fraud is established "by clear and convincing evidence," England v. Doyle, 281 F.2d 304, 310 (9th Cir. 1960). And while courts are in general cautions about vacating a judgment under their inherent equity power it has also been settled for over 100

28

years that in cases where the occasion has demanded, where enforcement of the judgment is "manifestly unconscionable, they have wielded the power without hesitation." *Pickford v. Talbott,* 225 U.S. 651, 657 (1912), see also *Hazel-Atlas Co. v. Hartford Co.,* 322 US 238, 244-245 (1944).

When all of the relevant circumstances of this case are taken into account, the only clearly equitable determination is that the motion of plaintiffs under Rule 60(d) (3) should be granted. We exercise the power to vacate judgments for fraud on the court "with restraint and discretion," *Chambers, 501 U.S. at 44*, and only when the fraud is established "by clear and convincing evidence," *England v. Doyle, 281 F.2d 304, 310 (9th Cir. 1960).*

## VI.    *CONCLUSION*

This is a case of fraud and concealment under Rule 63(d) (3) against Hospital Bella Vista Inc., the Administrator and trustees of the Pension Plan and the Bella Vista Hospital Saving Plan because the judgment dismissing the case for lack of subject jurisdiction was obtained by concealing a fraud and the existence of the 401(k) plan, which gives this federal court subject matter jurisdiction. ERISA was promulgated forty (40) years ago because some companies that offered pensions ended up not paying them, leaving workers unprotected in their retirement years. Today, public policies often undermine retirement income security, rather than enhance it. This decline is not inevitable. The same creativity

that established ERISA can enhance retirement security in the future—but the time to act is now. Our courts provide a forum to resolve disputes and to test and enforce laws in a fair and rational manner. The courts are an impartial forum, and judges are free to apply the law without regard to the government's wishes or the weight of public opinion. Court decisions are based on what the law says and what the evidence provides; there is no place in the courts for suspicion, bias or favoritism. This is why justice is often symbolized as a blindfolded figure balancing a set of scales, oblivious to anything that could detract from the pursuit of an outcome that is just and fair. Neither Congress nor the agencies that implement ERISA have kept pace with the times. Retirement income security has eroded along with the defined benefit plans ERISA was intended to protect. One of the most urgent issues we face in this case is the preservation of pension and disability rights accrued by two (2) employees that spent their lives working and waiting for their retirement years. But as presented in this case, their benefits are subject to the severe behavior of fiduciaries who are expected to have the higher standard of care and prudence vested to ERISA benefits trustees. Absent court intervention , plans covering  millions of people will almost certainly fail due to employers  deciding  to abandon them, forfeiting  participants benefits and concealing for fraud to deceive not only retirement plan  participants,  but also this Court. This integrity and dignity of individuals and the court of justice is what

ERISA and this judicial system is intended to protect. For this reason we pray this court to take this case as the opportunity to send a clear message to ERISA plan trustees, fiduciaries, employers, labor union and the government officials on the severity of defendants' behavior in this case and the magnitude of the sanction they deserve for deceiving this court in the manner that they did.

**WHEREFORE**, plaintiffs request this Honorable Court to grant this motion to set aside a judgment for fraud on the court determining that the District Court has subject matter jurisdiction over the facts and issues presented in this case.

RESPECTFULLY SUBMITTED

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this same day, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following: Cristina S. Belaval-Burger, cbelaval@mocpr.com; Francisco J. Colon-Pagan, fjcolon@colonlaw.com; Juan A. Marques-Diaz, jam@mcvpr.com; Carlos Martinez-Texidor, martexfed@prtc.net; Alberto Rodriguez-Ramos, arodzramos@mocpr.com; Manuel A. Segarra-Vazquez, maslaw@coqui.net; Fernando J. Valderrabano-Marina, fvalderrabano@mocpr.com.

In San Juan, Puerto Rico, this 24th day of November 2014.

**s/<u>Luis Vivaldi Oliver</u>**
**Luis Vivaldi Oliver, Esq.**
U.S.D.C.P.R. 214413
Attorney for Plaintiff

31

**LAW OFFICES OF**
**LUIS VIVALDI OLIVER**
P.O. Box 191340
San Juan, P.R. 00919
Tel.: (787) 753-7040
Fax.: (787) 753-5390
*e-mail: vivaldipension@hotmail.com*

**s/Robert Millán**
**Robert Millan, Esq.**
**MILLAN LAW OFFICE**
USCDPR 202406
Calle San Jose #250
San Juan, PR 00901
Tel: (787) 725-0946
*e-mail: rmi3183180@aol.com*