IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Olga Torres and Pedro Bonilla<br>Plaintiffs<br>v.<br>The Antillian Union Conference of Seventh Day Adventist, The Retirement Committee of the General Conference of Seventh Day Adventist Interamerican Division, The General Conference of the Seventh Day Adventist, Bella Vista Hospital Pension Plan And Trust, The Adventist of the Seventh Day Interamerican Division Retirement Plan, Bella Vista Hospital, Inc. 401k Plan, The Watson Wyatt Company, Pannell, Kerr & Foster, Miguel Ramos and Ruben Perez,<br>Defendants. | CIVIL NO.: 06-2158 (JAG)<br><br><br><br><br><br>Complaint For Declaratory Judgment, ERISA |

# MOTION FOR RECONSIDERATION

**TO THE HONORABLE MAGISTRATE:**

**COME NOW**, the plaintiffs, through the undersigned attorneys and respectfully state and pray as follows:

This is a request for reconsideration of this District Court order denying Motion to Set Aside Judgment and adopting Report and Recommendation (Dockets 202) and order finding moot and denying the Motion for Leave to File (Docket 203).

SUMMARY OF RELEVANT FACTS

The Plan was an ERISA plan since 1982 until the ruling was issued in 2000.

The Pension Plan was established by Bella Vista Hospital Inc. January 1, 1982 . The Pension was amended in 1985. In 1987 Bella Vista issued a corporate resolution to merge the pension plan formula with the benefit received from the Adventist Retirement Plan ( this resolution was kept undisclosed by defendants until November 2014, such change in plan

1

formulas not was reported  in the 5500 returns  prepared by Defendant Watson Wyatt and  filed by the Plan Administrator from 1988 to 1998. (See Plan Return Form 5500, Docket 40, Exh.4,5 and 6).

In 1997 Bella Vista discontinued the plan contribution and since that date abandoned their plan responsibilities as plan administrator. Although the hospital intend to replace the plan in 1999,  it was not until 2001 that the 401k was established by the hospital. Such plan documents were not provided to plaintiffs until 2014, when requested to the Oriental Bank and Trust.

In 1999, Bella Vista requested a ruling to the IRS to obtain the church plan exemption for the Pension Plan (See Letter to IRS, requesting church plan exemption in 1999, Docket 50, Exh. 3), which was granted in 2000 (See  2000 IRS Ruling, Docket 34, Exh. A). The ruling indicated that the Pension Plan was established in 1982, but it did not indicated  what entity established the Pension Plan in 1982. Bella Vista Hospital Inc. was incorporated in 1990. Neither the letter requesting the ruling, nor the ruling indicate that the Pension Plan  was amended through the Resolution of 1987 to combine the ERISA Pension Plan formula, offsetting benefit with benefit received from the Adventist  Retirement Plan. Such 1987 Resolution, that  merged the  plan formulas in 1987, was not disclosed by Defendants to plaintiffs and to the courts until November 2014. It impaired the celebration of the trial, which was scheduled few days later.

In 2001, the plan administrator Denied Olga Torres disability benefit with false allegation, knowing about such allegation and reason for benefit denial were false. See **Exhibit 4,** *Olga Torres, denial letter of May 22, 2001*. Mrs. Torres was fully vested considering she worked for 26.5 years for Bella Vista Hospital.  See **Exhibit 5,** *Certification of years of service*.

In 2003, after Mrs. Torres sent a legal letter to the Plan administrator, the hospital commenced the procedure to terminate the Pension plan, representing that it was a defined contribution plan and misrepresenting a benefit conversion offered to Mr. Pedro Bonilla to discontinue his disability pension payment; See *Sworn Statement of Mr. Luis Cintron, Trustee Official*, stating that the plan was a defined contribution plan (Docket 34, Exh. E).

In summary, Bella Vista Hospital have represented the plan as one combined program, but hiding plan documents rules and information, interfering with benefit claim procedure, issuing vague and ambiguous resolution with the intention to perform and implement a retroactive plan termination and conversion from a defined benefit plan to a defined contribution plan without disclosing and failing to follow the plan document rules.  Since that date, Bella Vista Hospital is representing that the Pension Plan was a defined contribution Plan and that plan benefits were in an individual plan account, forfeiting benefits options under the defined benefit Plan.

In that regard, all resolutions prepared by Bella Vista in relation to the establishment, operation and termination of the Pension Plan are incomplete, vague, and ambiguous. See **Exhibit 1**, *Bella Vista's corporate Resolution of April 4, 1982,* **Exhibit 2***, Resolution of May 4, 1987 and Resolution of April 3, 2003,* (Docket 34, Exh. D).

Plaintiffs request this court to reconsider its prior decisions based on changes to the controlling facts, namely, a final determination of the Puerto Rico State Court on January 12, 2015, validating the retroactive termination of the qualified defined benefit plan, resulting in forfeiture of Plaintiffs' vested disability benefit under the Plan. See *Partial Judgment of Puerto Rico State Court*. See Exhibit 1 to Plaintiff' Reply (Docket    ).See also **Exhibit 3,** *Solicitud de Sentencia Sumaria Parcial del 18 de agosto del 2014*, including Pension Plan Rules, as

3

amended in 1985, See also accompanying exhibits; **Exh.A**, *Resolution of April 3, 2003*, resolving to terminate the Plan, **Exh.B,** *Notificación de terminación y liquidación,* **Exh.C,** *Resolution of September 21, 2012***, Exh.D,** *Relacion del caso***, Exh.E**. Those are the only documents presented by Bella Vista Hospital to sustain the retroactive plan termination. Plaintiffs' position is that there was not enough evidence to sustain such retroactive plan termination.

On the other hand, the plan administrator has not been filing, reporting or disclosing plan transaction since 1997. That is all evidence or testimony presented by Bella Vista Hospital, as plan administrator, to sustain the alleged plan termination in 1998.   No testimony or sworn statements have been presented by defendants to show that the plan termination occurred during the 1998 plan year.

In this case, defendants are not hiding just documents. They have formulated a plan to hide to this federal and the state court what they intended and  implemented by lying and hiding documents since 1997, when  discontinued the contribution to the Pension Plan. Since that date, Bella Vista Hospital, as plan administrator abandoned all the plan responsibilities, failing to follow the plan rules in regard to benefit denial, discontinuance and plan termination procedures.

Plaintiffs are in a position to introduce evidence about referenced facts to sustain an ERISA fraud claim in requesting this court to reconsider the decision denying  reliefs from  its Opinion and Order of May 21, 2009 and the Motion for Leave to File an Opposition to Defendants Motion for Summary Judgment Supporting Plaintiff's Claim under Rules  60(b)(3), 60(d)(1) and (3).

However, if the Partial Judgment remains a valid decision of the Puerto Rico State Court, then the Plan termination is declared as of December 31, 1998, when there was no IRS Ruling granting the church plan exemption to the plan. As of that date, the Pension Plan was maintaining the ERISA acquired when the plan was established in 1982.

HEARING PENDING IN STATE COURT CASE

A  hearing in the Puerto Rico state court case is scheduled for November 6, 2015. At the hearing Plaintiffs expect to discuss the motions filed  to compel  defendant to  produce the  plan rules and other essential document, pending to be discovered and the state court will apply ERISA is considering issues pending before the  state court.

ISSUES TO BE DETERMINED BY THIS COURT BEFORE STATE COURT HEARING

a.  Whether the changes in the controlling facts and circumstances and meets the criteria of "extraordinary circumstances" necessary to modify a judgment  under Rule  60.

b.  Whether the Puerto Rico State Court's Partial Judgment is a valid court determination or not.

c.  Whether the facts and issues presented meet the criteria under Rule 60(d) (1) to entertain an independent action to relieve a party from a judgment, order, or proceeding.

This federal court is the court with jurisdiction to determine that the 2000 IRS Ruling was vacated by the Partial Judgment;  that it is not applicable to the Plan as of the termination date of December 31, 1998, and that as of that date  the Plan was an ERISA covered plan. Also to determine that the consolidation of plans, involving the Adventist Retirement Plan and the Bella Vista Hospital 401k,   resulted in an ERISA covered program sponsored by Bella Vista Hospital.

MEMORANDUM OF STATUTORY AUTHORITIES

This federal court is not prevented from entertain a new case under Rule 60  for plaintiffs for a relief of  defendant's  misstatements of facts, false representations, lying, hiding evidence and violating fiduciary responsibilities. Due to such interference for more than 10 years, the jurisdictional issue and the lack of expertise of the state court in this area of law, plaintiffs have not been able to perfect  their  judicial claim for a determination as to the amount of disability  benefit due to them under the Bella Vista  retirement plans.  As explained here below, Section 401(a) and subsequent IRC provisions are not applicable to the Pension Plan in Puerto Rico.

Bella Vista Hospital Inc. is an organization that was incorporated in 1990 and it was not until 1996 that it obtained the tax-exempt status under Section 501(a) of the IRC as an organization described in section 501(c)(3).  Bella Vista Hospital became  "exempt from Federal income tax under section 501(a) of the Internal Revenue Code ("IRC"), as an organization described in section 501(c)(3) in 1996. No church plan exemption may be invoked for the plan prior to that year. (Docket No. 34, Exh. C); Docket No.165, page 3.

The Pension Plan could not qualify as a church plan  because Bella Vista Hospital  was not a tax exempt entity   until 1996.See letter ruling from IRS (Docket34, Exh.C).     The Pension Plan is <u>excluded</u> under IRC  Code Section 414(e)(2)(A) because  Bella Vista Hospital was an unrelated trades or businesses within the meaning of  IRC section <u>513</u> that  was not tax-exempt under Code section 501 until 1996.

The Court may not consider the Pension Plan  a "non-electing" plan under  IRC 410(d) because Bella Vista Hospital  has not made the election under  ERISA Section 1022 (i)(2) to be covered by the Internal Revenue Code.

As indicated in the 2000 IRS Ruling,  all Pension Plan  participants are residents of Puerto Rico, the trust will be treated as exempt under Internal Revenue Code Section 501(a) as if it were part of a qualified plan under Internal Revenue Code Section 401(a). But it was not intending to qualify under  IRC Section 401(a).  As mentioned before, Bella Vista Hospital  has never made the election under ERISA Section 1022 (i)(2) to be covered by the Internal Revenue Code.

The Pension Plan was maintained, communicated and operated as an ERISA since its inception in 1982 (See Pension Plan Trust Agreement, Docket 34, Exh. B),  until it termination date in 1998.  Until that date the Plan had an ERISA status by virtue of the plan rules and the intention when the plan was established in 1982; see Opinion and Order of May 21, 2019 (Docket 165). Among other things, the 1982 rules (Docket 59, Exh. 2)  established that at the time of the Plan's creation it was subject to ERISA. See Opinion and Order,  Docket 165, at page 3.

Prior to 1996, the employees of Bella Vista Hospital may not be treated as employees of a church or a convention or association of churches under   414(e)(3)(B)(ii) because Bella Vista was not  exempted from tax under section 501(a) until 1996.  The church may not neither be considered the employer of Bella Vista Hospital employees under 414(e)(3)(C)  because such employees  do not fall within the definition of  employees to be included under Section 414(e)(3)(B)(ii). Therefore, Bella Vista Hospital is the only employer sponsoring the Pension Plan. The Church may not be deemed the employer of Bella Vista Hospital 'employees, and such employees not be deemed employees of the church.

In this case, the provisions of the IRC are applicable to Bella Vista Hospital, only to the extend it is related and necessary to maintain the 1996 exemption. The 1996 Ruling does not

affect the ERISA status of the Pension Plan. The effect of the 1996 Ruling is to grant the exemption to Bella Vista Hospital , but has no effect in the Pension Plan.

a. Bella Vista Pension Plan obtained the church plan status in 2000

The Pension Plan was communicated to participants as an ERISA plan since its inception. In addition to the above, this court may reconsider its prior determination that the Pension Plan a "non-electing" plan under IRS 410(d) for the following reasons: a.) the plan was covered by ERISA since 1982. It was established in 1982 as an ERISA covered Plan; b.) the Pension Plan was communicated and operated as an ERISA Plan by Watson Wyatt from 1982 to around 1998; c.) the pension plan filed form 5500 Return from 1982 to 1997 and paid PBGC insurance premiums, and, d.) the Plan rules documents provided for ERISA coverage. Defendant Watson Wyatt administered the Pension Plan as an ERISA defined benefit Plan. Wyatt provided actuarial services for an ERISA covered plan from 1982 until 1997. Since that Plan inception the intention was to provide for an ERISA covered definitive determinable benefit that qualified for Medicare reimbursement. Under such circumstances the Plan Administrator was not required to make the election under Section 410(d) to be covered by ERISA. It was already covered and operating as an ERISA plan.

Bella Vista failed to report the change in the pension plan formula, resulting from the Resolution of 1987. Such change was not reported in the Plan Report 5500, Sch. B, prepared by Watson Wyatt and filed for the Pension Plan from 1988 to 1997. Such plan change neither was t reported by Bella Hospital to the IRS when requested the ruling for the church plan exemption plan in 1999.See Letter to IRS dated February 24, 1999, (Docket 50, Exh.3).

b.  <u>Bella Vista Hospital was not an exempt entity under IRC Section 501(a) until 1996</u>.

Although the Plan was established as an ERISA covered plan in 1982, it was not until 1996 that Bella Vista obtained the ruling to be exempted under IRS 501(a) and until 1999 that requested the ruling under 414(e) for a determination that the Plan was a church plan.

On March 15, 2000, IRS issued a ruling granting the Plan a church plan exemption status for plan, which cannot be prior to 1996 because Bella Vista Hospital was not an exempt entity until that year.

Based in the contend of the 2000 IRS Ruling, in order for an organization that is not itself a church or convention or association of churches to have a church plan under Section 414(e) of the Code, that organization must establish that its employees are employees or deemed employees of the church or convention or association of churches under Section 414(e)(3)(B). Employees of any organization maintaining a plan are considered to be church employees if the organization: 1) is exempt from tax under Section 501 of the Code, 2) is controlled by or associated with a church or convention or association of churches; and 3) provides for administration or funding (or both) of the plan by an organization described in section 414(e)(3)(A) of the Code. See IRS Ruling 2000, page 4.   Bella Vista Hospital was not exempted under 501 of the Code until 1996.

c.  <u>ERISA Section 1022(i)(2)</u>

ERISA Section 1022(i)(2) provides that a sponsor of a Puerto Rican plan can make an irrevocable election for the plan to comply with all of the Internal Revenue Code's qualification provisions, except for the trust situs requirement.

d.  <u>IRC Section 410(d) was not available to the Plan Administrator, until  the ruling obtained  until 2000, but not for plan years before 1996.</u>

9

The Pension Plan gained the 414(e) status by virtue of the 2000 IRS Ruling, not because it was subject to an election under 410(d) that was not made by the plan administrator. The reason for that is that Bella Vista Hospital never made the election under Section 1022(i)(2) of ERISA to have the Pension Plan qualified under IRC Section 401(a).

Section 410(d) states:

Election by church to have participation, vesting, funding, etc., provisions apply

(1) In general

If the church or convention or association of churches *which maintains any church plan* makes an election under this subsection (in such form and manner as the Secretary may by regulations prescribe), then the provisions of this title relating to participation, vesting, funding, etc. (as in effect from time to time) shall apply to such church plan as if such provisions did not contain an exclusion for church plans.

(2) Election irrevocable

An election under this subsection with respect to any church plan shall be binding with respect to such plan, and, once made, shall be irrevocable.

Reg. § 1.410(d)-1 states:

Election by church to have participation, vesting, funding, etc. provisions apply.

(a) *In general.* If a church or convention or association of churches *which maintains any church plan, as defined in section 414(e)*, makes an election under this section, certain provisions of the Code and title I of the Employee Retirement Income Security Act of 1974 (the "Act") shall apply to such church plan as if such plan were not a church plan. The provisions of the Code referred to are section 410 (relating to minimum participation standards), section 411 (relating to minimum vesting standards), section 412 (relating to minimum funding standards), section 4975 (relating to prohibited transactions), and paragraphs (11), (12), (13), (14), (15), and (19) of section 401(a) (relating to joint and survivor annuities, mergers and consolidations, assignment or alienation of benefits, time of benefit commencement, certain social security increases, and withdrawals of employee contributions, respectively).

Bella Vista Hospital was not maintaining a church plan until 2000.

10

Section 410(d) of the Internal Revenue Code,  26 USC 410(d),  states that if the church or convention or association of churches which maintains any church plan makes an election under this subsection (in such form and manner as the Secretary may by regulations prescribe), then the provisions of this title relating to participation, vesting, funding, etc. (as in effect from time to time) shall apply to such church plan as if such provisions did not contain an exclusion for church plans. Section 410(d) (2) states that an election under this subsection with respect to any church plan shall be binding with respect to such plan, and, once made, shall be irrevocable.

 IRC Section 410(d) is not applicable to the Bella Vista Pension Plan because it  requires the plan to be afforded with a church plan status as a condition for the election to be made under Section 410(d). The Plan was not  granted with a church plan exemption until 2000.

Absent a ruling, such election requirement may not be  the Bella Vista Pension Plan because the plan needs to be a church plan, subject to the IRC provisions, to qualify for the election thereunder. If there is no ruling granting the church plan status to the Pension Plan,  the Plan may not be subject to the election mandated by  Section 410(d) and the plan administrator may not be bound to  make an election under Section 410(d).  Therefore, for that reason, the Pension Plan could  not be considered  by this court a  " non-electing plan" under  IRC Section 410(d).

ERISA SECTION 501

ERISA contains a series of detailed reporting and disclosure requirements applicable to plan administrators. *See* ERISA Sections 101 to 111 [29 U.S.C. Sections 1021-1031] (2003). According to Congress, Part 1 of Title 1 of ERISA is designed to: (1) disclose significant information about plans and all plan-related transactions; (2) provide specific data to plan participants and beneficiaries about their rights and benefits, and the circumstances that may

result in a loss of those benefits; and (3) set forth the responsibilities and proscriptions applicable to persons occupying a fiduciary relationship to employee benefit plans. *See* House Education and Labor Committee, Employee Retirement Income Security Act of 1974, H.R. 533, 93rd Cong. (2d Sess. 1974), reprinted in 1974 U.S.C.C.A.N. 4639, 4648-49. ERISA Section 501 evidences a decision by Congress to use criminal penalties rather than punitive damages to deter willful violations of reporting and disclosure requirements. *See Whitaker v. Texaco, Inc.* , 566 F. Supp. 745 (N.D. Ga. 1983).

Any person who willfully violates any provision of part 1 of this subtitle, or any regulation or order issued under any such provision, shall upon conviction be fined not more than $100,000 or imprisoned not more than 10 years, or both; except that in the case of such violation by a person not an individual, the fine imposed upon such person shall be a fine not exceeding $500,000.

Willful Violation

ERISA Section 501 applies to willful violations, including violations involving the duty of disclosure and reporting, summary plan descriptions, annual reports, filing and furnishing of information, reporting of participants' benefit rights, and retention of records. *See* ERISA Sections 101-111 [29 U.S.C. Sections 1021-1031] (2003). Two kinds of "intent" exist in criminal law: general intent and specific intent. General intent must exist in all crimes (i.e., the general intent to do the prohibited act). General intent simply means one intends to engage in the prohibited conduct, meaning the prohibited act was performed voluntarily, knowingly and intentionally rather than accidentally or mistakenly. *See e.g., Browder v. United States* , 312 U.S. 335 (1941). In other words, one does not have to actually intend to violate the law. Instead, all that is required is the intent to do the act that is prohibited by the applicable law. *U.S. v.*

12

*Phillips* , 19 F.3d 1565 (11th Cir. 1994). Specific intent, in contrast, means that a special mental element is required.

CONCLUSION

As part of the reconsideration requested, the court must evaluate to determine whether the Partial Judgment, which is affecting areas of federal jurisdiction, is a valid judgment or not. Also, to reconsider all its prior finding in this Rule 60 claim, providing plaintiffs the relief they are seeking from this court Judgment of May 21, 2009.

WHEREFORE, the plaintiffs request this honorable court that for the reasons stated here above, reconsidering their decision denying plaintiffs' claims to modify and/ or setting aside the federal and state court judgments under Rule 60 for the reasons stated here above.

In San Juan, Puerto Rico, on this 8th day of October 2015.

RESPECTFULLY SUBMITTED

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this same day, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following: Cristina S. Belaval-Burger, cbelaval@mocpr.com; Francisco J. Colon-Pagan, fjcolon@colonlaw.com; Juan A. Marques-Diaz, jam@mcvpr.com; Carlos Martinez-Texidor, martexfed@prtc.net; Alberto Rodriguez-Ramos, arodzramos@mocpr.com; Manuel A. Segarra-Vazquez, maslaw@coqui.net; Fernando J. Valderrabano-Marina, fvalderrabano@mocpr.com.

In San Juan, Puerto Rico, on this 8th day of October 2015.

**S/LUIS VIVALDI-OLIVER**
**Attorney for Plaintiff**
**USDC No. 214413**

**LAW OFFICES OF**
**LUIS VIVALDI-OLIVER**
**P.O. BOX 191340**
**SAN JUAN, PR 00919-1340**
**Tel: (787) 413-2218**
**Fax: (787) 725-0946**
**e-mail: *vivaldipension@hotmail.com***

**S/ROBERT MILLAN**

13

**ROBERT MILLAN, ESQ.**
**USDC No. 202406**
**CALLE SAN JOSE #250,**
**SAN JUAN, PR 00901**
**Tel.  (787) 725-0946**
**Fax : (787) 725-0946**
**e-mail:** _**rmi3183180@aol.com**_

14